STATE OF NORTH CAROLINA v. ROGER ALAN POINTER

No. COA06-181

(Filed 2 January 2007)

**1. Assault— specific intent to kill—evidence sufficient**

The trial court did not err by denying defendant's motion to dismiss charges of assault with intent to kill inflicting serious injury where defendant presented expert testimony that he could not have formed the specific intent to kill due to mental disorders and an excessive dose of medication, and the State presented evidence of the nature of the assaults.

**2. Criminal Law— jury impaneled after opening argument— harmless error**

The trial court's error in not impaneling the jury until after the State's opening argument was harmless.

**3. Jury— request to view evidence—jury not returned to courtroom—appeal waived**

Defendant waived any assertion of error in the court not bringing the jury back to the courtroom after its requests to review evidence by consenting to the court communicating with the jury by sending exhibits or writing a note explaining the denial of the jury's requests.

**4. Appeal and Error— preservation of issues—lack of argument or authority**

An assignment of error was deemed abandoned where defendant did not state any supporting reasoning or argument or cite authority.

Appeal by defendant from judgment entered 12 August 2005 by Judge Robert C. Ervin in Lincoln County Superior Court. Heard in the Court of Appeals 12 October 2006.

*Attorney General Roy C. Cooper, by Assistant Attorney General Jane L. Oliver, for the State.*

*Haral E. Carlin for defendant-appellant.*

STEELMAN, Judge.

Defendant appeals two convictions of assault with a deadly weapon with intent to kill inflicting serious injury because he asserts that he did not have the ability to form the intent to kill. For the reasons stated herein, we find no prejudicial error.

Factual Background

The State's evidence tended to show that Kimberly Rogers ("Rogers") invited her brother, Roger Allen Pointer ("defendant"), to live with her in Lincolnton, North Carolina in 2002. Rogers lived with her three children: Seth, age sixteen; Karissa, age thirteen; and, Tiffany, age twelve. It was agreed that defendant would obtain employment and assist Rogers with household expenses. However, defendant did not maintain any kind of steady employment.

In 2004, Rogers told defendant he needed to leave because she could not continue to support herself, her children, and defendant. However, defendant made no effort to find a new place to live. On 27 September 2004, at approximately 10:00 a.m., Rogers told defendant that he had to leave the home that day. Defendant became irritated and complained that he had no place to go. He took four tablets of Klonopin, a medicine he took for an anxiety disorder. The normal dose was one tablet, twice a day. The defendant felt groggy after taking the pills. He testified at trial that he did some laundry, played computer games, and checked his e-mail after taking the Klonopin.

Rogers left the home with her children, returned at approximately 6:00 p.m., and found defendant asleep on the couch. Rogers contacted the Sheriff's Department and told defendant to leave. Rogers told defendant that the police were on the way. Defendant became angry, grabbed his things, and left the residence. Between 2:00 a.m. and 2:30 a.m., defendant returned to the home. He used a key to gain entry to the home. Rogers was confronted by defendant, who was standing beside her bedroom door. Defendant attacked her with a large kitchen knife. Rogers eventually fell down, and defendant got on top of her and continued to stab her. Defendant did not say anything during the attack. Rogers was stabbed twenty-two times in the neck and chest.

Karissa Rogers was awakened by her mother's screams. She started striking defendant in an effort to make him stop stabbing her mother. Defendant turned on Karissa and began stabbing her. She was stabbed five times: once in the upper stomach resulting in liver

damage, once in the chest causing damage to her diaphragm, and several times on her arm. Seth Rogers was also awakened by his mother's screams. He entered the living room and saw defendant stabbing Rogers and Karissa. Seth punched defendant and was able to stop him from attacking Karissa. Defendant fled the home. Defendant was found by a Sheriff's deputy riding a bicycle away from the residence. He was taken into custody and admitted to Lincoln County Sheriff's Department Detective Johnson that he had attacked Rogers but did not recall how many times he stabbed her or if he had stabbed anyone else.

At trial, defendant contended that he did not have the intent to kill Rogers or Karissa. Defendant presented Dr. John Warren as an expert witness in the fields of psychology and forensic psychology. Dr. Warren testified that defendant did not remember the actual attacks or what happened. Dr. Warren expressed the opinion that as a result of taking the four Klonopin tablets on the day of the attack, defendant's ability to form the specific intent to kill would have been "grossly impaired if there at all."

The jury found defendant guilty of: (1) assault with a deadly weapon with intent to kill inflicting serious injury upon Rogers; (2) assault with a deadly weapon with intent to kill inflicting serious injury upon Karissa; (3) assault with a deadly weapon upon Seth. Defendant was given consecutive active sentences totaling 176 months to 230 months. Defendant appeals.

### Defendant's Ability to Form an Intent to Kill

[1] In his first two arguments defendant contends that the trial court erred in denying his motions to dismiss the two charges of assault with a deadly weapon with intent to kill inflicting serious injury because of insufficient evidence of his intent to kill. We disagree.

In *State v. Barnes*, 334 N.C. 67, 430 S.E.2d 914 (1993), our Supreme Court reiterated the standard of review for motions to dismiss in criminal trials:

> Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.

*Id.* 334 N.C. at 75, 430 S.E.2d at 918 (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)).

Evidence is substantial if relevant and adequate to convince a reasonable mind to accept a conclusion. *State v. Vick,* 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995) (citing *State v. Vause,* 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991)). If there is substantial evidence, whether direct or circumstantial, to support a finding that the offense charged has been committed and that the defendant committed it, the motion to dismiss should be denied and the case should be submitted to the jury. *See State v. Williams,* 319 N.C. 73, 79, 352 S.E.2d 428, 432 (1987). In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence. *State v. Gibson,* 342 N.C. 142, 150, 463 S.E.2d 193, 199 (1995).

The elements of assault with a deadly weapon with intent to kill inflicting serious injury are: (1) an assault, (2) with a deadly weapon, (3) with an intent to kill, and (4) inflicting serious injury, not resulting in death. *See* N.C.G.S. § 14-32(a) (2003); *State v. Tirado,* 358 N.C. 551, 579, 599 S.E.2d 515, 534 (2004). On appeal, defendant contends that the State failed to present sufficient evidence and failed to prove beyond a reasonable doubt the third element—that defendant had the specific intent to kill the victims, Rogers and Karissa.

Defendant introduced the expert testimony of Dr. Warren who testified that in his opinion defendant could not have formed the specific intent to kill at the time of the attacks due to the presence of multiple mental disorders and defendant's excessive dose of Klonopin prior to the attacks. The State offered no expert testimony to rebut Dr. Warren's testimony. Defendant argues that Dr. Warren's testimony rebutted the element of intent to kill and that the State failed to present any contrary evidence.

An intent to kill is usually shown through inferences from the established underlying facts and circumstances of the case. *State v. Thacker,* 281 N.C. 447, 455, 189 S.E.2d 145, 150 (1972). "The nature of the assault, the manner in which it was made, the weapon, if any, used, and the surrounding circumstances are all matters from which an intent to kill may be inferred. Moreover, an assailant must be held to intend the natural consequences of his deliberate act." *State v. Grigsby,* 351 N.C. 454, 457, 526 S.E.2d 460, 462 (2000) (internal citations and quotation marks omitted). A qualified expert may give her opinion about whether a defendant could have formed an intent to kill. *State v. Jackson,* 340 N.C. 301, 310, 457 S.E.2d 862, 868 (1995). Expert testimony, however, does not bind a trier of fact. *Correll v.*

*Allen,* 94 N.C. App. 464, 470, 380 S.E.2d 580, 584 (1989). " 'Even though unimpeached and uncontradicted,' expert testimony is not conclusive upon the trier 'since the trier may apply his own experience or knowledge in determining how far to follow the expressed opinion.' " *Id.* (quoting *Security-First Nat'l Bank of Los Angeles v. Lutz,* 322 F.2d 348, 355 (9th Cir. 1963)); *see also* N.C.P.I.—Crim 104.94 (2002).

While the State did not present expert testimony contradicting the testimony of Dr. Warren, the trial court properly considered the nature of the assaults on Rogers and Karissa in deciding whether the State presented sufficient evidence of intent. Evidence showed that defendant stabbed Rogers twenty-two times. In the course of stabbing her, defendant knocked her to the ground, got on top of her, and continued stabbing her. Defendant also stabbed Karissa five times inflicting serious injuries. The number of stab wounds and the manner in which the stabbing of Rogers and Karissa took place were all relevant factors for the jury to consider. *Grigsby,* 351 N.C. at 457, 526 S.E.2d at 462.

These facts, taken together with defendant's own testimony and defendant's statement to Detective Johnson that he had attacked Rogers, support the reasonable inference that defendant intended to kill Rogers and Karissa. Thus, the State satisfied its burden of offering sufficient evidence to support the element of intent to kill. *See Grigsby,* 351 N.C. 454, 526 S.E.2d 460 (holding that evidence of intent to kill existed when the defendant jumped on the victim's back, threatened the victim, and used a knife that enabled the defendant to stab the victim without losing his grip). While Dr. Warren provided testimony that defendant did not form an intent to kill, it was for the jury to decide whether an intent to kill was present, and they were not bound by the opinion of defendant's expert witness.

We further note that the trial court gave the jury instructions on a defendant's voluntary intoxication by drugs. *See* N.C.P.I.—Crim. 305.19 (2002). If upon considering the evidence, the jury had a reasonable doubt as to whether defendant had the requisite intent, the jury was instructed to find defendant not guilty. The jury found defendant had the requisite intent to kill to support his conviction of assault. The trial court did not err in denying defendant's motion to dismiss the two charges of assault with a deadly weapon with intent to kill inflicting serious injury. This argument is without merit.

STATE v. POINTER

[181 N.C. App. 93 (2007)]

### Impaneling the jury

**[2]** In his third argument, defendant contends that the trial court committed reversible error by failing to properly impanel the jury. We disagree, and hold that any error was not prejudicial.

Our standard of review for failure to properly impanel the jury is for prejudicial error. *State v. Stephens,* 51 N.C. App. 244, 246, 275 S.E.2d 564 (1981). N.C. Gen. Stat. § 15A-1216 provides that the clerk impanels the jury after all members of the jury have been selected. Defendant cites to *Stephens,* 51 N.C. App. at 246, 275 S.E.2d at 275, for its holding that prejudicial error exists where the trial court completely fails to impanel the jury.

*Stephens* is distinguishable from defendant's case. In *Stephens* the jury was never impaneled. In the instant case, the judge did not impanel the jury until after the State's opening statement to the jury. Although the trial court erred in failing to impanel the jury at the proper time in accordance with N.C. Gen. Stat. § 15A-1216, defendant presents no argument of prejudice arising from this error. There being no evidence of prejudice, we find the error to be harmless.

### Trial Court's Handling of Jury Request to Review Evidence

**[3]** In his fourth and fifth arguments, defendant contends the trial court violated the mandatory requirements of N.C. Gen. Stat. § 15A-1233(a) when responding to the jury's request to review evidence during their deliberations and that he is entitled to a new trial. We disagree.

N.C. Gen. Stat. § 15A-1233(a) states:

If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

We review the trial court's decision in these matters for abuse of discretion. *Id; see also State v. Porter,* 340 N.C. 320, 329, 457 S.E.2d 716, 720 (1995).

STATE v. POINTER

[181 N.C. App. 93 (2007)]

After the jury started its deliberations, the jury sent a note to the trial court asking to review certain evidence. The trial court, with the consent of both the State and defendant, sent two exhibits, one diagram and a photograph, to the jury room for review. The trial court did not conduct the jurors to the courtroom after this request. The jury also requested that they be able to view two statements defendant gave to Detective Johnson. The trial court correctly denied this request on the grounds that they had not been admitted into evidence. *See State v. Hines*, 131 N.C. App. 457, 462, 508 S.E.2d 310, 314 (1998). The trial court did not conduct the jurors into the courtroom following this request. The trial court instead wrote a note to the jurors, approved by both counsel, explaining the reason for denying the request. Defendant did not object.

We note that although defendant did not object at trial, "[a] lack of objection at trial does not bar a defendant's right to assign error to a judge's failure to comply with the mandates of Section 15A-1233(a)." *State v. Helms*, 93 N.C. App. 394, 401, 378 S.E.2d 237, 241 (1989) (citing *State v. Ashe*, 314 N.C. 28, 40, 331 S.E.2d 652, 659 (1985)). However, when a defendant's lawyer consents to the trial court's communication with the jury in a manner other than bringing the jury back into the courtroom, the defendant waives his right to assert a ground for appeal based on failure to bring the jury back into the courtroom. *Helms*, 93 N.C. App. at 401, 378 S.E.2d at 241. Defendant, therefore, waived the right to have the jury returned to the courtroom. This argument is without merit.

[4] Defendant also contends that the trial court failed to exercise its discretion when the jury requested they view defendant's two statements to Detective Johnson during deliberations. Although defendant properly assigned error to this contention in the record, he fails to state any reasoning or argument or cite authority that there was any abuse of discretion on the part of the trial court. This assignment of error is therefore deemed abandoned. N.C. R. App. P. 28(b)(6) (2006).

For the foregoing reasons, defendant received a fair trial free from prejudicial error.

NO PREJUDICIAL ERROR.

Judge GEER concurs.

Judge STEPHENS concurs prior to 31 December 2006.