STATE OF NORTH CAROLINA v. JOHN C. ROOKS

No. COA08-551

(Filed 7 April 2009)

**1. Confessions and Incriminating Statements— written statement—motion to suppress improperly granted—sufficiency of findings of formal arrest**

The trial court erred in a case arising out of the sexual abuse of a child by granting defendant's motion to suppress his written statement, and the case is remanded because a review of the facts and circumstances revealed that the trial court's findings did not support a conclusion that there was a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest.

**2. Search and Seizure— consensual search—exclusion of evidence improper**

The trial court erred in a case arising out of the sexual abuse of a child by excluding evidence seized as a result of a consensual search because Miranda warnings are inapplicable to searches and seizures, and a search by consent is valid despite failure to give such warnings prior to obtaining consent.

Appeal by the State from order entered 5 December 2007 by Judge Richard Brown in Hoke County Superior Court. Heard in the Court of Appeals 4 December 2008.

*Attorney General Roy Cooper by Special Deputy Attorney General Robert C. Montgomery for the State.*

*Glover & Petersen, P.A. by Ann B. Petersen for defendant-appellee.*

CALABRIA, Judge.

The State appeals the trial court's grant of John C. Rooks' ("defendant's") motion to suppress. We reverse and remand.

On 9 November 2006, Detective John Kivett of the Hoke County Sheriff's Department ("Detective Kivett") was dispatched to defendant's home in response to a call reporting an alleged sexual assault on a child. Defendant's wife told law enforcement she observed defend-

ant on his knees with his penis placed on his daughter's stomach and between her legs.

Detective Kivett was the second officer to arrive at the couple's home. When Detective Kivett arrived, he noticed defendant sitting outside speaking with his brother, C.M. Rooks. Detective Kivett did not speak to defendant at that time. Detective Kivett entered the home, where he spoke with the first officer to arrive and defendant's wife. He then went outside and introduced himself to the defendant, who was sitting in his parked car in front of his home. Detective Kivett informed defendant that he was there to conduct an investigation and asked defendant to join him in his unmarked patrol car. Defendant agreed. Detective Kivett told defendant that he was not under arrest.

Detective Kivett sat in the driver's seat and defendant sat in the front passenger's seat of the patrol car. Defendant was not restrained with handcuffs. The doors were unlocked. Detective Kivett told defendant he needed a statement from him and said defendant agreed to give a statement. Detective Kivett asked defendant if he knew why he was there. Defendant answered yes. Detective Kivett asked defendant to tell him "why [he] was there." Defendant said "it was the worse possible thing." Detective Kivett asked defendant to tell him "what that was." Detective Kivett testified defendant told him "[Detective Kivett] was there because [defendant] had molested his daughter."

Detective Kivett spoke with defendant for a little over an hour. Defendant responded to approximately fourteen questions by Detective Kivett describing the incident his wife witnessed, as well as several other incidents involving his daughter. Other law enforcement officers interrupted the interview to ask Detective Kivett questions about collecting evidence from the home. C.M. Rooks also interrupted the questioning to find out "how much longer" it was going to take. Detective Kivett documented defendant's answers to his questions and then had him review and initial the statement ("the written statement"). Defendant also signed a consent to search form. Detective Kivett did not read defendant his *Miranda* rights.

After defendant gave Detective Kivett his statement, Detective Kivett exited the patrol car and entered defendant's home. Detective Kivett remained in the home for about twenty to twenty-five minutes to ensure the other officers had collected evidence and taken pho-

tographs.[1] When Detective Kivett finished, he placed defendant under arrest and restrained him with handcuffs.

On 12 March 2007, defendant was indicted on thirteen counts of indecent liberties with a child, two counts of crime against nature, five counts of disseminating obscenity to a minor under thirteen, and four counts of first-degree statutory sexual offense. Defendant moved to suppress his statements and "all evidence found resulting from the illegally obtained statements."

The trial court conducted an evidentiary hearing on the motion to suppress and heard testimony from Detective Kivett and C.M. Rooks. C.M. Rooks testified that when he arrived at defendant's home, defendant was crying and reluctant to talk. After defendant entered Detective Kivett's patrol car and while he was being questioned by Detective Kivett, C.M. Rooks waited for the interview to conclude. After waiting about six minutes, C.M. Rooks determined his brother would not be leaving the car and left.

The trial court concluded that defendant's first statement, that he had molested his daughter, was voluntary and would be allowed. The trial court also found, *inter alia,* that five other police officers were present, that defendant was in a position to see Detective Kivett enter his home before speaking with him, that Detective Kivett was plain-clothed but identified himself as a Hoke County Sheriff's Department detective, that defendant acted like he was in trouble, held his head down, was not talkative, and that defendant's brother believed defendant would not be leaving the car. The trial court granted the motion to suppress as to both the written statement and the evidence seized as a result of the consent form. The trial court determined a reasonable person in defendant's position would have understood that he was in custody. The State appeals the order excluding the written statement and the evidence seized as a result of the consent to search.

## I. Standard of Review

"[W]hether an individual is in custody is a mixed question of law and fact." *State v. Garcia,* 358 N.C. 382, 391, 597 S.E.2d 724, 733

---

1. The parties presented conflicting evidence on whether defendant remained in the patrol car after questioning. Detective Kivett testified that after defendant finished giving his statement, defendant left the vehicle and spoke with his brother. Defendant's brother testified he left while Detective Kivett was speaking with defendant and did not return or talk to defendant afterwards or see defendant exit the patrol car. The trial court made no findings as to whether defendant remained in the patrol car after questioning or not.

(2004) (citing *Thompson v. Keohane*, 516 U.S. 99, 112, 133 L. Ed. 2d 383, 394 (1995)). "[W]e review the trial court's findings of fact to determine whether they are supported by competent record evidence, and we review the trial court's conclusions of law for legal accuracy and to ensure that those conclusions reflect a correct application of law to the facts found." *Id.* (citation and internal quotation marks and brackets omitted).

### . II. Custodial Interrogation

**[1]** We first address the State's argument that the trial court erred in excluding the written statement.

> The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. "In *Miranda*[,] . . . the United States Supreme Court determined that the prohibition against self-incrimination requires that prior to a custodial interrogation, the alleged defendant must be advised that he has the right to remain silent and the right to the presence of an attorney." *State v. Warren*, 348 N.C. 80, 97, 499 S.E.2d 431, 440 (citing *Miranda*, 384 U.S. at 479, 86 S.Ct. at 1630, 16 L. Ed. 2d at 726), *cert. denied*, 525 U.S. 915, 119 S.Ct. 263, 142 L. Ed. 2d 216 (1998).

*State v. Rollins*, 189 N.C. App. 248, 261, 658 S.E.2d 43, 51, *disc. review granted by* 362 N.C. 478, 667 S.E.2d 272 (2008). "The rule in *Miranda* applies only when a defendant is subjected to custodial interrogation." *State v. Hipps*, 348 N.C. 377, 396, 501 S.E.2d 625, 637 (1998) (citing *State v. Gaines*, 345 N.C. 647, 661, 483 S.E.2d 396, 404 (1997)).

"[I]n determining whether a suspect is in custody, an appellate court must examine all the circumstances surrounding the interrogation; but the definitive inquiry is whether there was a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest." *State v. Buchanan*, 353 N.C. 332, 338, 543 S.E.2d 823, 827 (2001) (quotation omitted), *appeal after remand at* 355 N.C. 264, 559 S.E.2d 785 (2002)) ("*Buchanan I*"). "This is an objective test, based upon a reasonable person standard, and is to be applied on a case-by-case basis considering all the facts and circumstances." *State v. Jones*, 153 N.C. App. 358, 365, 570 S.E.2d 128, 134 (2002) (internal quotation marks and citation omitted).

In *State v. Jones*, this Court affirmed the trial court's determination that defendant was not in custody where the defendant volun-

tarily accompanied police officers to the police department for an interview, was not handcuffed, was told he was not under arrest, was offered the use of the bathroom, no threats or promises were made, and defendant was left unattended while the interviewing officers took a break. *Id.* at 365-66, 570 S.E.2d at 134. In *State v. Hipps*, the Court determined a defendant was not subject to custodial interrogation where he voluntarily entered the officer's patrol car, sat in the front seat, was not restrained with handcuffs, and was not told he was under arrest or that he could not leave. *Hipps*, 348 N.C. at 399, 501 S.E.2d at 638; *see also State v. Parker*, 59 N.C. App. 600, 607, 297 S.E.2d 766, 770 (1982) (no restraint on defendant's freedom where defendant voluntarily agreed to sit in officer's patrol vehicle); *cf. U.S. v. Colonna*, 511 F.3d 431, 435 (4th Cir. 2007) (although defendant was told he was not under arrest, because defendant was awakened by armed agents, continuously guarded during a three-hour interrogation, and told twice that lying to a federal agent was a federal offense, defendant was subject to custodial interrogation for purposes of *Miranda*) and *State v. Johnston*, 154 N.C. App. 500, 503, 572 S.E.2d 438, 441 (2002) (holding defendant was in custody after he was ordered out of his vehicle at gun point, handcuffed, and placed in the back of a patrol vehicle).

In the instant case, the trial court found that defendant was asked politely by the detective to enter an unmarked police car and answer questions. He was told that he was not under arrest. The car was unlocked and defendant was left unattended after the officer completed the interview. No evidence was presented indicating that the officer displayed a weapon, or otherwise threatened the defendant. Considering all the facts and circumstances, we conclude there are insufficient findings to support a conclusion that "there was a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest." *Buchanan I*, 353 N.C. at 338, 543 S.E.2d at 827.

Defendant contends his earlier confession was a significant factor in determining whether he was in custody and cites *State v. Buchanan*, 355 N.C. 264, 559 S.E.2d 785 (2002) ("*Buchanan II*"). We find *Buchanan II* distinguishable from the case at bar.

In *Buchanan*, an officer arrived at defendant's workplace and told defendant he needed to speak with him regarding a double murder that had occurred. *Buchanan I*, 353 N.C. at 333, 543 S.E.2d at 824. The officer asked defendant to come to the police station. *Id.* The officer gave defendant the option of riding to the police station in his

own vehicle, or with the officer. *Id.* The defendant chose to ride with the officer. *Id.* The officer told defendant he was not under arrest and he was free to leave at any time. *Id.* The defendant was not restrained with handcuffs and rode in the front passenger seat of the officer's car. *Id.* Upon arrival at the police station, both of them entered a back door and walked through the officers' break room. *Id.* at 334, 543 S.E.2d at 824. Defendant asked to use the restroom and after receiving directions from the officer, he went unaccompanied to the restroom. *Id.*

When defendant returned, he was questioned in the presence of two officers. *Id.* at 334, 543 S.E.2d at 825. At one point defendant admitted that he had gone "berserk" and shot at the two victims. *Id.* Shortly after this confession, defendant asked to use the restroom. *Id.* Unlike his first trip to the restroom, this time defendant was accompanied by two officers who entered the restroom with defendant. *Id.* at 334-35, 543 S.E.2d at 825. Upon returning to the office, defendant was again advised that he was not under arrest and was free to leave. *Id.* at 335, 543 S.E.2d at 825. Defendant made further incriminating statements and eventually signed a written statement admitting he shot the victims. *Id.* Defendant was not advised of his *Miranda* rights until after he had signed his confession. *Id.* On appeal, the Supreme Court remanded for the trial court to consider the facts under an objectively reasonable person standard. *Id.* at 342, 543 S.E.2d at 829-30.

After remand, the Supreme Court affirmed the trial court's conclusion that

> a reasonable person in defendant's position would have believed he was in custody—restrained in his movement to the degree associated with a formal arrest,—when, after admitting to his station house interrogators that he had participated in a homicide, those same interrogators accompanied him to the bathroom, with an officer staying with defendant at all times.

*Buchanan II,* 355 N.C. at 265, 559 S.E.2d at 785 (internal citation and quotation marks omitted). The *Buchanan II* Court found it significant that the level of security over defendant elevated after he confessed. *Id.*

Here, after defendant finished his written statement, in which he confessed to several offenses involving his daughter, Detective Kivett exited the patrol car and entered the house. There is nothing in the

record to suggest Detective Kivett increased security over the defendant after his confession as the officers did in *Buchanan II*. Detective Kivett's instructions to the officers to collect evidence and transport the victim to the hospital during the interview does not affect this Court's analysis. Detective Kivett's actions did not restrain defendant's freedom of movement. The fact that defendant held his head down, was not talkative, and "was acting like he was in trouble" might suggest he did not feel free to leave. However, the defendant's subjective belief has no bearing here. *Jones*, 153 N.C. App. at 365, 570 S.E.2d at 134. To hold otherwise would defeat the objective reasonable person standard. *See Yarborough v. Alvarado*, 541 U.S. 652, 663, 158 L. Ed. 2d 938, 950 (2004) ("the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned" (quoting *Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L. Ed. 2d 293 (1994) (per curiam)). These facts and circumstances do not support a conclusion that defendant was subjected to custodial interrogation.

### III. Consent to Search

[2] The State also assigns error to the trial court's exclusion of evidence seized as a result of the search. Defendant concedes this error. We agree.

The trial court concluded defendant was subject to custodial interrogation and his written statement "is excluded together with any items seized an [sic] a result of the consent to search signed by the defendant at the conclusion of that interrogation." This conclusion was in error. "*Miranda* warnings 'are inapplicable to searches and seizures, and a search by consent is valid despite failure to give such warnings prior to obtaining consent.'" *State v. Cummings*, 188 N.C. App. 598, 602, 656 S.E.2d 329, 332 (quoting *State v. Frank*, 284 N.C. 137, 142, 200 S.E.2d 169, 173 (1973), *review denied*, 362 N.C. 364, 661 S.E.2d 743 (2008)).

The trial court's order granting the motion to suppress is reversed. We remand to the lower court for further proceedings consistent with this opinion.

Reversed and remanded.

Judges STEELMAN and STROUD concur.