STATE OF NORTH CAROLINA v. ERIC ALLEN WILLIAMS

No. COA10-1133

(Filed 6 September 2011)

## 1. Confessions and Incriminating Statements—motion to suppress statements—intoxication—credibility—custody —written findings and conclusions required

The trial court erred in a sex offense in a parental role and incest case by denying defendant's motion to suppress his statements to a detective and in later overruling the objections he made when this evidence was introduced at trial. Although the extent of defendant's intoxication at the time he gave his statement, and the weight to be given it, was for the jury to consider in evaluating the credibility of the evidence, the case was remanded for written findings of fact and conclusions of law resolving the material conflict in the evidence regarding whether defendant was in custody at the time he gave his statements and whether he should have been read his Miranda rights.

———

STATE v. WILLIAMS

[215 N.C. App. 412 (2011)]

**2. Jury—request for evidence—failure to conduct jurors back to courtroom—failure to show prejudice**

Although the trial court in a sex offense in a parental role and incest case violated N.C.G.S. § 15A-1233(a) by failing to conduct the jurors back to the courtroom after the jury sent a note requesting all State's evidence including copies of letters, defendant failed to meet his burden of showing that he was prejudiced.

**3. Appeal and Error—preservation of issues—failure to raise constitutional issue at trial**

Although defendant contended that the trial court violated his right to be free from double jeopardy when it sentenced him for both sex offense in a parental role and incest, defendant failed to preserve this argument because he did not raise this issue at trial and the Court of Appeals declined to exercise its discretion under N.C. R. App. P. 2.

**4. Sentencing—prior record level—calculation**

The trial court did not err by determining that defendant was a prior record level IV offender. The trial court properly calculated defendant's prior record level without including any of the felonies used to establish his habitual felon status.

Judge BRYANT concurring in part and dissenting in part.

Appeal by defendant from judgments entered 24 March 2010 by Judge James G. Bell in Johnston County Superior Court. Heard in the Court of Appeals 23 February 2011.

*Attorney General Roy Cooper, by Assistant Attorneys General Charles E. Reece and Catherine F. Jordan, for the State.*

*William D. Spence for defendant-appellant.*

GEER, Judge.

Defendant Eric Allen Williams appeals from his convictions of two counts of sex offense in a parental role and two counts of incest. Defendant primarily contends on appeal that the trial court erred in admitting a statement he made to a detective prior to being read his *Miranda* rights. Defendant argues that the statement should have been excluded because (1) he was in custody at the time of the statement, and (2) he was so intoxicated that his statement was not voluntarily made. Because there exists a conflict in the evidence as to

whether defendant was in custody and because the trial court failed to enter a written order containing findings of fact resolving this conflict, we must remand for entry of a written order including findings of fact and conclusions of law. We find unpersuasive, however, defendant's argument as to his level of impairment and his remaining arguments regarding the trial.

Facts

The State's evidence tended to show the following facts. In February 2007, when "Natalie"[1] was 16 years old, her mother married defendant. At some point, Natalie became concerned about the relationship between her younger sister and defendant. Natalie observed instances in which defendant moved her sister away from Natalie and her brother, and Natalie's sister, according to Natalie, "would be sitting on his lap and he would be in her face talking to her and he would kiss her on her lips." When Natalie asked her sister what defendant was saying, she answered, "[H]e says I'm the only one that understands him and stuff like that." Natalie was concerned because when she herself was eight years old, she was abused by her first stepfather, who used to say similar things to her.

In November 2007, Natalie, her sister, her brothers, and defendant were in the living room watching television. Defendant was lying on the floor on a blanket. Natalie noticed that defendant was "moving the covers like over his penis . . . maybe he was scratching." But then the covers flipped down and he exposed his penis. Natalie took her little sister into another bedroom to get away from defendant and tried to pretend as if nothing happened.

Either the next day or later that week, defendant exposed his penis to Natalie again as she walked through the living room. He was sitting with his legs pulled up to his chest, and his loose basketball shorts were "up and his penis was hanging out the bottom of it." He said, "psst" and "was like I know you see me."

Later that week, Natalie confronted defendant about his actions. Defendant at first claimed not to know what she was talking about, but after Natalie said she had seen him, he asked, "[D]o you want to see it again." She said "no" and went into another room to call a friend. Defendant came into the room and "had his pants kind of

---

1. The pseudonym "Natalie" is used to protect the victim's privacy and for ease of reading.

down and his penis was out and he was jumping up and down." As he did this, he repeatedly asked Natalie if she was "ready," and she replied "No." She got off the phone and walked to her room. Defendant walked behind her, continuing to ask her whether she was ready, and she finally said "yeah, okay." When asked at trial why she said "yeah, okay," she explained: "Because I was tired of him bothering me."

Defendant entered Natalie's room and sat on the bed. He asked her, "[D]o you see what you do to me"? He then put her hand on his erect penis and asked if he could touch her chest. She said, "[Y]eah, sure, okay" and "just look[ed] off in space" as defendant touched her chest. Defendant asked whether she was ready, and Natalie lay back. Defendant put his penis into Natalie's vagina until she told him to stop. Afterward, she said to defendant, "I thought you wanted my sister." He responded, "[N]o, I got you now."

Natalie testified that after that day in November 2007, when Natalie came home from school each day, defendant, who did not work, would be walking around the house naked. Natalie and defendant would have sex every day after Natalie got home from school while they were alone in the house. Natalie was always the first child to arrive home from school, and her mother would still be at work. Natalie testified that in January 2008, they had sex more than once a day. They continued to have sex "a lot" through April 2009, at least every week, except during periods when defendant was in jail. Natalie was ashamed of what was happening, but she never told anyone because she did not want defendant or her mother to get in trouble and because she feared that her mother would blame her.

In April 2009, Natalie's mother, Ms. Williams, discovered a letter Natalie had written to defendant but never given him. The letter indicated Natalie felt "guilty about what they did," and it "said something about just because you have good dick." Later that day, Ms. Williams told Natalie that she had found the letter, and Natalie admitted that she and defendant had been having sex. Ms. Williams subsequently reported the matter to law enforcement.

Detective Matt DeSilva of the Johnston County Sheriff's Office was assigned to investigate the case in May 2009. Detective DeSilva first spoke with Natalie and her mother, and their statements to him were consistent with their trial testimony.

Detective DeSilva also spoke to defendant about his relationship with Natalie. Defendant admitted that he had vaginal sex with Natalie

before he went to jail in November 2007. After he got out of jail in January 2008, he had sex with Natalie again. He was incarcerated again from March 2008 until February 2009, when he was released from prison. He and Natalie, who was 18 years old at that time, then continued to have sex. Defendant had sex with Natalie for the last time in March 2009, just prior to when he and Ms. Williams ended their relationship. Detective DeSilva read each page of defendant's statement to defendant, and defendant initialed each page before signing and dating the statement at the end.

On 6 July 2009, defendant was indicted for two counts of statutory rape in a parental role and two counts of incest. Subsequently, on 2 November 2009, he was indicted as a habitual felon based on two prior convictions for sale of cocaine and a conviction for uttering a forged instrument.

At trial, defendant denied ever having a sexual relationship with Natalie. Defendant claimed that Natalie had come into his room one night in April 2009 while he was intoxicated and begun to perform oral sex on him and that he told her to stop. Defendant said Natalie told him she "wanted her mama to suffer like she was suffering because the relationship [sic] her mama wouldn't let her have." Defendant admitted, however, that, prior to one of his previous periods of incarceration, he had sent Natalie a letter asking her to spend a weekend with him and to bring him penis enlargement pills, and to hide the letter itself " 'so no one will find it.' " Defendant also claimed that Detective DeSilva had fabricated his written statement and that he had not paid attention to the statement when he signed it.

In addition, one of the indictments had listed January 2008 as the date of the offense. Defendant's mother and sister testified, however, that defendant was at his mother's house for the first several days in January 2008.

The jury found defendant guilty of two counts of sex offense in a parental role and two counts of incest. Defendant pled guilty to being a habitual felon. The trial court sentenced defendant to a presumptive-range term of 133 to 169 months imprisonment for the January 2008 offenses and to a consecutive presumptive-range term of 37 to 54 months imprisonment for the November 2007 offenses. Defendant timely appealed to this Court.

I

[1] Defendant first argues that the trial court erred in denying his motion to suppress his statement to Detective DeSilva and in later

overruling the objections he made when this evidence was introduced at trial. Defendant insists that his statement was inadmissible because, at the time he gave it, he was in custody but had not yet been read his *Miranda* rights. In addition, he argues that he was impaired to such an extent that the statement was made involuntarily.

The State presented the following evidence during a *voir dire* examination of Detective DeSilva. On the morning of 20 May 2009, Detective DeSilva drove by defendant's residence and saw defendant and another man on the top of the residence repairing the roof. Detective DeSilva did not see any alcohol on the roof or near defendant. Detective DeSilva turned his vehicle around and returned to the residence. He saw the other man working on the rooftop and asked him where defendant went. The man said that defendant had just stepped down. Detective DeSilva noticed that the front door of the residence was open, and he called out for defendant. Defendant exited the residence voluntarily.

Defendant did not appear to be intoxicated. Detective DeSilva did not detect any odor of alcohol, defendant was steady on his feet, defendant made good eye contact, and defendant's speech was not slurred. Detective DeSilva introduced himself and explained that he needed to speak with defendant about the situation between Natalie and him. Because there was a lot of noise from the roof work, Detective DeSilva asked defendant if he minded sitting in his patrol vehicle with him in the front seat. Detective DeSilva explained to defendant that he was not under arrest, and he was not being charged with any crime.

According to Detective DeSilva, defendant entered the patrol vehicle and sat down in the passenger seat, although he left the passenger side door open. Detective DeSilva again told defendant that he was not under arrest. Defendant agreed to speak with Detective DeSilva. At no time during their conversation did Detective DeSilva advise defendant of his *Miranda* rights.

Detective DeSilva reported the allegations that defendant had engaged in sex with Natalie. Detective DeSilva told defendant that he was not saying that defendant had sex with Natalie when she was 16 years old; rather, Detective DeSilva told defendant, he had been told that Natalie was 17 years old when the sex occurred. Defendant told Detective DeSilva that he did not have sex with Natalie when she was 16, but he admitted that he had engaged in sex with her when she was 17 years old.

Detective DeSilva further testified that defendant admitted that he had vaginal sex with Natalie (1) in 2007 before he was incarcerated later that year, (2) in January 2008 after being released, and (3) after he completed a prison term from June 2008 to February 2009, when Natalie was 18. Defendant admitted he also had oral sex with Natalie when she was 18 years old, but claimed he "never had sex with her again in any way after that." Defendant said the last time he had sex with her was in March 2009 when he split up with her mother.

Detective DeSilva took handwritten notes during his conversation with defendant. Detective DeSilva read the notes aloud to defendant while defendant followed along. Defendant did not indicate that anything was wrong with the statement, and he signed the pages. After the conversation, defendant exited Detective DeSilva's vehicle. Detective DeSilva left and did not arrest defendant.

Detective DeSilva stated that defendant was not handcuffed, he seemed to understand the questions Detective DeSilva asked him, and he had no problem speaking or reading. Detective DeSilva was seated close enough to defendant that he was able to observe defendant—he did not observe anything unusual about defendant. Defendant did not appear to be impaired.

On cross-examination, Detective DeSilva further testified that defendant never said that he had been drinking and never indicated that he was impaired. When Detective DeSilva invited defendant into his patrol vehicle, defendant never protested, and he never suggested that he could speak with him at a later time. Defendant's eyes were not red, glassy, or bloodshot. No odor of alcohol was present.

Defendant also testified on *voir dire*, and his evidence tended to show the following. When Detective DeSilva arrived at his residence, he was in the backyard drinking beer. Defendant testified that he was drinking "Old Gold, Old English 800," and that he had consumed about two 40 ounce beers. Defendant testified that he told Detective DeSilva that he did not feel like talking at that time because he was "not in [his] right state of mind," and he asked if he could talk to Detective DeSilva the next day. Defendant testified that Detective DeSilva told him, "[N]o, since I have you here now, just go get in the car and I will talk to you now." Defendant testified that after he entered the patrol vehicle, Detective DeSilva placed handcuffs on the dashboard, and defendant closed the passenger side door. Defendant testified that he "kept asking" Detective DeSilva if he could exit the vehicle, and Detective DeSilva said "no."

Following the testimony and arguments by counsel, the trial court announced: "The Court will find that the defendant was not in custody, that the defendant was not impaired at the time of the statement; that the statement of the defendant was voluntary to the detective and the Court will deny the motion to suppress." The trial court did not make any additional findings or reduce the ruling to writing.

Defendant contends that the trial court violated N.C. Gen. Stat. § 15A-977(f) (2009) by failing to enter a written order on the motion to suppress that included findings of fact resolving all material conflicts in the evidence. N.C. Gen. Stat. § 15A-977(f) provides that in ruling on a motion to suppress, "[t]he judge must set forth in the record his findings of facts and conclusions of law." "This statute has been interpreted as mandating a written order unless (1) the trial court provides its rationale from the bench, and (2) there are no material conflicts in the evidence at the suppression hearing." *State v. Williams*, 195 N.C. App. 554, 555, 673 S.E.2d 394, 395 (2009). If both these criteria are met, the necessary findings of fact are implied from the denial of the motion to suppress. *Id.*

Here, although the trial court announced its rationale for the denial from the bench, defendant contends that a written order was required because there was a material conflict in the evidence. According to defendant, the evidence gave rise to an issue as to (1) whether he was impaired at the time he gave his statement and (2) whether he was in custody at the time he gave his statement.

With respect to the question of defendant's impairment, it is well established that " '[w]hether a confession was voluntarily given is to be determined from the totality of the circumstances surrounding the confession.' " *State v. Tuck*, 173 N.C. App. 61, 72, 618 S.E.2d 265, 273 (2005) (quoting *State v. Greene*, 332 N.C. 565, 579, 422 S.E.2d 730, 738 (1992)). " '[W]hile they are factors to be considered, intoxication and subnormal mentality do not of themselves necessarily cause a confession to be inadmissible because of involuntariness or the ineffectiveness of a waiver.' " *Id.* (quoting *State v. Barnes*, 345 N.C. 184, 245, 481 S.E.2d 44, 78 (1997)). "Instead, the confession 'is admissible unless the defendant is so intoxicated that he is unconscious of the meaning of his words.' " *Id.* (quoting *State v. Oxendine*, 303 N.C. 235, 243, 278 S.E.2d 200, 205 (1981)).

In arguing that he was impaired, defendant points to his testimony that he had consumed two 40-ounce beers and did not feel in his "right state of mind" at the time. This testimony is not sufficient

to show that defendant was unconscious of the meaning of his words or that he "was so heavily under the influence that he could not understand the implications of confessing to sexually assaulting his [step]daughter." *State v. Barnes*, 154 N.C. App. 111, 116, 572 S.E.2d 165, 169 (2002) ("The record does not show defendant was so heavily under the influence that he could not understand the implications of confessing to sexually assaulting his daughter. There was no evidence defendant was unable to walk or carry on a normal conversation. Defendant's own testimony was the only evidence tending to prove any use of prescription drugs and alcohol, and defendant contends only that he was under the influence of alcohol and perhaps prescription drugs. Lastly, defendant was able to relate the events of 20 July 1998 to a degree of detail inconsistent with someone who was impaired and unaware of the meaning of his words.").

Although defendant's testimony conflicted with Detective DeSilva's on the question whether defendant was intoxicated, because defendant's testimony was not adequate to meet the standard for rendering his statement involuntary, the conflict was not *material*. *See State v. Baker*, ___ N.C. App. ___, ___, 702 S.E.2d 825, 831 (2010) ("Based on the foregoing, we hold that, for purposes of section 15A–977(f), a material conflict in the evidence exists when evidence presented by one party controverts evidence presented by an opposing party such that the outcome of the matter to be decided is likely to be affected.").

This conflict did not, therefore, require the trial court to make written findings regarding defendant's level of impairment. The extent of defendant's intoxication at the time he gave his statement, and the weight to be given it, was for the jury to consider in evaluating the credibility of the evidence. *State v. Isom*, 243 N.C. 164, 166, 90 S.E.2d 237, 238-39 (1955).

We now turn to defendant's contentions regarding whether he was in custody when he gave his statement. *Miranda's* requirements are triggered when an individual is "in custody." *State v. Davis*, 305 N.C. 400, 414-15, 290 S.E.2d 574, 583 (1982). The "appropriate inquiry in determining whether a defendant is in custody for purposes of *Miranda* is, based on the totality of the circumstances, whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *State v. Buchanan*, 353 N.C. 332, 339, 543 S.E.2d 823, 828 (2001) (internal quotation marks omitted).

The State's evidence, on the one hand, showed that Detective DeSilva asked defendant if he could speak with him about what happened with Natalie. Defendant got in the patrol car himself and left the passenger door open during the conversation. Detective DeSilva told defendant he was not under arrest and was not being charged with any crime.

Defendant's evidence, on the other hand, indicated that Detective DeSilva, whose gun and badge were visible to defendant, asked if he could speak to defendant. Defendant asked if he could speak to him the next day, but Detective DeSilva "said no, . . . just go get in the car and I will talk to you now." Defendant got in the car, Detective DeSilva displayed his handcuffs on the dashboard, and Detective DeSilva directed defendant to close the passenger door. According to defendant, he "closed the door, but [defendant] kept asking [Detective DeSilva] could [he] get out because [he] didn't feel like talking. [Detective DeSilva] said no, since you're here we're going to talk." Defendant "kept telling him [he] didn't want to talk to him."

Detective DeSilva and defendant thus presented completely conflicting descriptions of what occurred. The question remains whether this conflict was material with respect to whether defendant's statement should have been excluded.

The State, in arguing that defendant was not in custody, relies upon Detective DeSilva's testimony. That testimony would suggest that defendant was not in custody. *See State v. Hipps*, 348 N.C. 377, 399, 501 S.E.2d 625, 638 (1998) (holding that defendant was not in custody when "defendant got into the car on his own, sat beside the officer in the front seat, was not handcuffed, and was not told he was under arrest or that he could not leave"); *State v. Rooks*, 196 N.C. App. 147, 151, 674 S.E.2d 738, 741 (2009) (holding that defendant was not in custody when "the trial court found that defendant was asked politely by the detective to enter an unmarked police car and answer questions"; "[h]e was told that he was not under arrest"; "[t]he car was unlocked and defendant was left unattended after the officer completed the interview"; and "[n]o evidence was presented indicating that the officer displayed a weapon, or otherwise threatened the defendant").

Defendant's testimony, however, if believed in whole, would support a conclusion that defendant was in custody. A trial court could reasonably find, based on that testimony, that defendant did not voluntarily get into Detective DeSilva's car, but rather was required to do

so and was required to shut the door. Further, the trial court could find that defendant was then prohibited by Detective DeSilva, who displayed his gun and handcuffs, from leaving the car without answering the detective's questions. This testimony would be sufficient to support a conclusion that defendant was in custody.

Our Supreme Court, in *Buchanan*, 353 N.C. at 339, 543 S.E.2d at 828, noted that "[c]ircumstances supporting an objective showing that one is 'in custody' might include a police officer standing guard at the door [or] locked doors or application of handcuffs." In *State v. Washington*, 102 N.C. App. 535, 538, 402 S.E.2d 851, 853-54 (Greene, J., dissenting), *rev'd for reasons in dissenting opinion*, 330 N.C. 188, 410 S.E.2d 55 (1991) (per curiam), Judge Greene applied a similar reasoning. In *Washington*, the defendant was stopped and placed in the back seat of the officer's police car where the door handles did not work. Judge Greene pointed out that the defendant was, "in effect, incarcerated on the side of the road" and that "[a] reasonable person in the defendant's position would have believed that he had been taken into custody . . . ." *Id.*, 402 S.E.2d at 854. Consequently, the defendant was in custody for purposes of *Miranda. Id.*

Here, defendant's account would allow a trial court to reasonably infer that Detective DeSilva required defendant to get inside the patrol car, told him to shut the door, and was essentially "standing guard at the door" of the vehicle, in that he was sitting right next to defendant, who asked to leave, and—with handcuffs prominently displayed—told defendant that he could not leave and that they were going to talk. *See also Commonwealth v. Turner*, 2001 PA Super 79, ¶ 2, 772 A.2d 970, 976 (2001) ("We conclude that the combination of placing Turner in the police car, shutting the door, leaving him there until Cassidy arrived, and Cassidy questioning him while blocking the doorway and leaning into the backseat with Torres behind him, compels the conclusion that Turner reasonably could have presumed that he was not free to leave.").

If the trial court accepted defendant's version of the encounter, then it could conclude defendant was in custody. The State, in attempting to distinguish *Washington*, depends entirely on Detective DeSilva's testimony. The State makes no argument that defendant's testimony, if believed, would result in a determination that defendant was not in custody. This conflict between Detective DeSilva's testimony and defendant's testimony was, therefore, material. "Because a material conflict in the evidence presented at the suppression hearing exist[ed], the trial court, by virtue of the mandate of section 15A–977(f)

and our holding in *Williams,* was required to make findings of fact and conclusions of law." *Baker,* ___ N.C. App. at ___, 702 S.E.2d at 833.

Consequently, we must remand for written findings of fact and conclusions of law resolving the material conflict in the evidence regarding whether defendant was in custody at the time he gave his statement and whether he should have been read his *Miranda* rights. If the trial court determines that the motion to suppress was properly denied, then defendant would not be entitled to a new trial because there would have been no error in the admission of the evidence, and his convictions would stand. If, however, the trial court determines that the motion to suppress should have been granted, defendant would be entitled to a new trial.

## II

**[2]** Defendant next argues that, during jury deliberation, the trial court violated N.C. Gen. Stat. § 15A-1233(a) (2009) by failing to conduct the jurors back to the courtroom after the jury sent a note saying: "Want to see all State's evidence including both copies of letters." N.C. Gen. Stat. § 15A-1233(a) provides:

If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors *must be conducted to the courtroom.* The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

(Emphasis added.)

In this case, when the jury sent its request, the judge read the request aloud. Both the prosecutor and defense counsel indicated they had no objection to the request. Then, pursuant to the judge's instruction, the bailiff took the State's exhibits to the jury room. Although defendant did not object to the failure of the trial court to conduct the jury to the courtroom, defendant is not precluded from raising this issue on appeal. *State v. Nobles,* 350 N.C. 483, 506, 515 S.E.2d 885, 899 (1999).[2]

---

2. We recognize that this Court has previously held that "when a defendant's lawyer consents to the trial court's communication with the jury in a manner other than bringing the jury back into the courtroom, the defendant waives his right to assert

In *Nobles*, the Supreme Court held that although the trial court erred in failing to conduct the jury to the courtroom, the defendant was still required to "demonstrate that there [was] a reasonable possibility that a different result would have been reached had the trial court's error not occurred." *Id.* The Court pointed out that "[n]ot only did defendant's counsel agree with the trial court when it erroneously thought that it had discretion whether to bring the jury to the courtroom, but there was unanimous agreement among the State, the defendant, and the trial judge concerning the items requested by the jury; and the prosecution and defendant consented to permitting the jury to have those items." *Id.* Given those circumstances, the Court concluded that the defendant failed to show he was prejudiced by the trial court's failure to follow the requirements of N.C. Gen. Stat. § 15A-1233(a). *Nobles*, 350 N.C. at 506, 515 S.E.2d at 899.

In this case, it is apparent that the trial court also violated N.C. Gen. Stat. § 15A-1233(a). But, as in *Nobles*, defendant consented to the jury's receiving the requested items and had no objection to submitting the items to the jury without bringing the jury to the courtroom. With respect to the question of prejudice, defendant admits in his brief that "on its face, the jury's request seems to be fairly clear," but defendant suggests that perhaps the jury wanted a copy of the transcript of the State's witnesses' testimony. Defendant cannot, however, meet his burden through speculation in his brief as to the mere possibility that the jury was requesting evidence not provided. Accordingly, we hold that defendant has failed to meet his burden of showing that he was prejudiced by the trial court's failure to comply with N.C. Gen. Stat. § 15A-1233(a).

III

**[3]** Defendant further argues that after the jury returned its verdicts, the trial court violated defendant's right to be free from double jeopardy when it sentenced him for both sex offense in a parental role and incest because, he claims, this amounted to multiple punishments for the same offense. Defendant admits that he did not raise this issue at trial but relies on *State v. Hargett*, 157 N.C. App. 90, 577 S.E.2d 703 (2003), for the proposition that this issue is nonetheless preserved for review. In *Hargett*, this Court held that the defendant was not

a ground for appeal based on failure to bring the jury back into the courtroom." *State v. Pointer*, 181 N.C. App. 93, 99, 638 S.E.2d 909, 913 (2007). We are, however, bound to follow the Supreme Court and thus, consistent with *Nobles*, we address the merits of defendant's argument.

required to have raised the double jeopardy issue below since it was a sentencing error. *Id.* at 92, 577 S.E.2d at 705.

*Hargett,* however, is inconsistent with numerous Supreme Court cases holding that a double jeopardy argument cannot be raised for the first time on appeal. *See, e.g., State v. Davis,* 364 N.C. 297, 301, 698 S.E.2d 65, 67 (2010) ("To the extent defendant relies on constitutional double jeopardy principles, we agree that his argument is not preserved because [c]onstitutional questions not raised and passed on by the trial court will not ordinarily be considered on appeal." (internal quotation marks omitted)); *State v. Madric,* 328 N.C. 223, 231, 400 S.E.2d 31, 36 (1991) ("The defendant candidly concedes . . . that he did not raise any double jeopardy issue at trial. Therefore, this issue has been waived."). Because we are bound to follow the Supreme Court, we hold that defendant's argument is not preserved. Although defendant asks, in the alternative, that we exercise Rule 2, we decline, in our discretion, to do so.

IV

**[4]** In his final argument, defendant contends that the trial court erred in determining that he was a prior record level IV offender because the State improperly used two of his felony convictions both to establish defendant's habitual felon status and to calculate his prior record level. N.C. Gen. Stat. § 14-7.6 (2009) provides that "[i]n determining the prior record level, convictions used to establish a person's status as an habitual felon shall not be used."

The State contended that defendant was a habitual felon based on (1) a 19 January 1999 conviction for the Class G felony of selling cocaine (file number 98 CRS 16308), (2) a 9 January 2002 conviction for the Class G felony of selling cocaine (file number 01 CRS 59125), and (3) a 13 December 2007 conviction for the Class I felony of uttering a forged instrument (file number 05 CRS 59401). Based on our review of the record, we conclude that the trial court properly calculated defendant's prior record level without including any of these felonies used to establish defendant's habitual felon status.

Defendant stipulated to the prior record level worksheet and that worksheet indicates defendant had *two* 9 January 2002 convictions for the Class G felony of selling a schedule II controlled substance. Moreover, at trial, defendant testified that he was convicted of two counts of selling cocaine on 9 January 2002. This Court has previously held that a "trial court is not prohibited 'from using one conviction obtained in a single calendar week to establish habitual felon

status and using another separate conviction obtained the same week to determine prior record level.' " *State v. Skipper*, 146 N.C. App. 532, 537, 553 S.E.2d 690, 693 (2001) (quoting *State v. Truesdale*, 123 N.C. App. 639, 642, 473 S.E.2d 670, 672 (1996)). Accordingly, after the trial court used one of the 9 January 2002 convictions for habitual felon determination, under *Skipper*, it could still use the other 9 January 2002 conviction to calculate defendant's prior record level.

Defendant also contends that the prior record level calculation improperly "includ[ed] a class H cocaine conviction in 98 CRS 16308," even though that "felony cocaine conviction[] [was] alleged in the habitual felony bill of indictment." The "cocaine conviction" in the indictment was, however, the Class G felony of sale of cocaine, while the conviction used to calculate the prior record level was a Class H felony for possession with intent to manufacture, sell, or deliver cocaine. The record contains a copy of defendant's 19 January 1999 judgment indicating that defendant was convicted of one Class G offense and one Class H offense on the same day. The trial court used the Class G offense for the habitual felon determination, but, under *Skipper*, the court was free to use the Class H offense for prior record level points. Since defendant makes no other argument about the calculation of his prior record level, we conclude that the trial court did not err in determining that defendant was a prior record level IV offender.

Remanded in part; no error in part.

Judge ELMORE concurs.

Judge BRYANT concurs in part and dissents in part in a separate opinion.

BRYANT, Judge, concurring in part and dissenting in part.

Where the majority holds that there exists a material conflict in the evidence regarding whether defendant was in custody at the time he gave his statement and remands for entry of an order including findings of fact and conclusions of law, I disagree, and, therefore, respectfully dissent from this portion of the majority opinion only. I otherwise fully concur in the majority opinion holding no error as to defendant's remaining arguments.

Preliminarily, I note that in his appeal defendant did not object to the issue at hand; i.e. the trial court's failure to make findings of fact

and conclusions of law. Failure to object at trial makes this issue subject to dismissal for failure to properly preserve an issue for appellate review. N.C. R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make . . . ."). However, citing N.C.G.S. § 15A-977, defendant avers that his right to appeal this issue is properly preserved because the trial court "acted contrary to a statutory mandate." Because I do not find that the trial court acted contrary to a statutory mandate, I would dismiss defendant's appeal of this issue based on failure to properly preserve the issue.

The majority acknowledges that the trial court announced its rationale for denial of defendant's motion to suppress in open court. In its ruling, the trial court stated, *inter alia*, that defendant was not in custody, that defendant's statement was voluntary and denied defendant's motion to suppress. While the trial court's order was not set out in a separate writing containing formal findings of fact, conclusions of law, and signature of the trial court, the trial court's order denying suppression is a part of the record as recorded in the transcript of the hearing. Therefore, I must emphasize that in this case, because the trial court's findings of fact are clearly, albeit succinctly, a part of the record, requiring remand to clarify the record in writing is elevating form over substance.

"The language of section 15A-977(f) has been interpreted as mandatory to the trial court unless (1) the trial court provides its rationale from the bench, and (2) there are no material conflicts in the evidence at the suppression hearing." *Baker*, ___ N.C. App. at ___, 702 S.E.2d 828-29. *See also, State v. Jacobs*, 174 N.C. App. 1, 620 S.E.2d 204 (2005) (holding no error where the trial court failed to make written findings of fact and conclusions of law in support of its conclusion to deny the defendant's motion to suppress where the trial court provided its rationale from the bench. (citing *State v. Phillips*, 300 N.C. 678, 685, 268 S.E.2d 452, 457 (1980)) (*vacated in part on other grounds, rev'd in part on other grounds*, 361 N.C. 565, 648 S.E.2d 841 (2007)).

The critical issue that distinguishes the majority's reasoning from the reasoning in this dissent: The majority says the conflict in the evidence was material. I strongly disagree. The record supports that there exists conflict in the evidence between what defendant said occurred (officer asked if he could speak to defendant and had him

get into patrol car where handcuffs were "displayed" on dashboard, defendant did not feel like talking but officer said since you are here we're going to talk), and what officer said occurred (officer asked if he could speak to defendant and defendant got in patrol car and left passenger door open while they talked; and defendant was told by officer he was not under arrest and not being charged). Again, I disagree that this constitutes a material conflict.

In order to constitute a material conflict, evidence presented must be so controverted as to likely affect the outcome of the matter. *Baker*, ___ N.C. App. at ___, 702 S.E.2d at 831 ("a material conflict in the evidence exists when evidence presented by one party controverts evidence presented by an opposing party such that the outcome of the matter to be decided is likely to be affected."). Here, defendant's evidence needs to be sufficient to support a conclusion that defendant was in custody. I do not believe this evidence is sufficient to do so. Further, the majority cites a number of cases from our Supreme Court and Court of Appeals holding that on similar facts, the defendant was found not to be in custody: *Hipps*, 348 N.C. 377, 501 S.E.2d 625; *Buchanan*, 353 N.C. 332, 543 S.E.2d 823; *Rooks*, 196 N.C. App. 147, 674 SE.2d 738; *Washington*, 102 N.C. App. 535, 402 S.E.2d 851; and *Turner*, 2001 Pa. Super. 79, 772 A.2d 970. With the exception of *Washington* (where facts showed defendant involuntarily restricted in back seat of patrol car), the majority cites only one Pennsylvania case holding that a custodial interrogation occurred, and in that case defendant was placed in the back seat of a car and questioned by one officer while another stood just behind him. *Turner*, 2001 Pa. Super. 79, 772 A.2d 970. Therefore, the majority's reasoning seems to be that the evidence in the instant case presents a material conflict because, based on the cases the majority discusses, defendant's evidence would be sufficient to support a conclusion that defendant was in custody.

Because I disagree with the basic premise that these facts, if taken as true, would support a conclusion that defendant was in custody, I would hold that the trial court's summary findings, on the record, though not in writing, were more than sufficient to meet the dictates of N.C.G.S. § 15-977. I would affirm the trial court's denial of defendant's motion to suppress.