McGEE, Chief Judge.
 

 *125
 
 Patty Meadows ("Defendant") was convicted on 7 April 2016 of one count each of trafficking opium by sale, by delivery, and by possession. The events leading to Defendant's arrest and conviction occurred on 14 September 2011.
 

 I.
 
 Factual and Procedural Basis
 

 In early September 2011, multiple sources informed the Madison County Sheriff's Office that Defendant's husband, Troy Meadows ("Troy"), was selling large quantities of prescription pills. A confidential informant, Jeffrey Chandler ("Chandler") told officers that Troy would be obtaining pills on 14 September 2011, pursuant to a prescription, for the purposes of illegal re-sale. Chandler informed officers that he had obtained this information from Jason Shetley ("Shetley") who, in the past, had illegally purchased pills from Troy.
 

 Sheriff's officers planned a controlled buy for 14 September 2011. The plan was for Chandler to ask Shetley to purchase pills from Troy, using bills provided by the Sheriff's Office, and thereby obtain probable cause to search Troy's and Defendant's house ("the Meadows home" or "the house") on Rollins Road. Officers gave Chandler $420.00 ("the
 
 *126
 
 buy money") on 14 September 2011 for the purchase. The buy money had been photocopied so that individual serial numbers were recorded. Chandler contacted Shetley to set up the purchase. Shetley was to make the purchase with the buy money provided by Chandler, and purchase twenty-five oxycodone pills for himself and fifty for Chandler. At trial, Shetley testified he called Troy about 9:00 a.m. on 14 September 2011 to tell him he wanted to purchase seventy-five oxycodone pills. Chandler then met with Shetley and Shetley's girlfriend, Catherine Davis ("Davis"). Chandler used approximately $20.00 of the buy money to purchase gas for Shetley's car ("the car"). Chandler, Shetley, and Davis then drove to the Meadows home.
 

 Madison County Sheriff's Detective Coy Phillips, now a captain ("Capt. Phillips"), was watching the house that morning. Shetley entered the Meadows home at approximately 9:45 a.m., while Chandler and Davis waited in Shetley's car. At trial, Shetley further testified that he never saw Troy that morning-that he "just pulled up, went and knocked on the door, and [Defendant] was in the kitchen and told me to come in. She had the pills out [on the table]. I bought the pills from her." According to Shetley, Defendant told him she had already counted out the seventy-five pills, and he then counted out twenty-five pills, which he put in a pill bottle he had brought with him. He then counted out an additional fifty pills, which he put in a plastic baggie provided by Defendant. Shetley testified that he gave Defendant payment, which she counted. Shetley then left the house.
 

 About five minutes after Shetley entered the house, Capt. Phillips observed him exit
 
 *685
 
 the house and return to the car. Shetley, Chandler and Davis then drove away from the Meadows home. Capt. Phillips continued to watch the house until a deputy arrived "to secure [the house] because we were going to execute a search warrant at [the house]." Shortly after the car left the house, it was stopped by officers, including Madison County Chief Deputy Michael Garrison ("Chief Garrison"),
 
 [1]
 
 and the occupants were searched. Shetley testified that, when he saw police approaching, he threw his bottle of twenty-five pills out the car window, but that Chandler held onto the plastic baggie that contained the fifty pills. Officers recovered a plastic baggie containing fifty oxycodone pills from Chandler, and recovered a bottle containing twenty-five oxycodone pills from the side of the road in the vicinity of the car. Officers had maintained constant visual contact with Chandler from the time he was
 
 *127
 
 given the $420.00 until the time they stopped and searched the car and its occupants. One of the photocopied twenty dollar bills was found in Shetley's sock, but the remainder of the buy money was not recovered from the car or its occupants. Shetley and Davis were arrested, and taken to the Sheriff's Office.
 

 Chief Garrison testified he secured the house immediately after arresting Shetley and Davis and, at that time, Defendant was the only person at the house. Chief Garrison left the house at approximately 10:00 a.m., while deputies remained to keep the house and Defendant secure. Troy and Defendant's daughter arrived sometime after 10:00 a.m., though the exact times they were at the house are unclear. Chief Garrison further testified he returned to the house just after 4:00 p.m. to execute a search warrant he had obtained, and that the house and its occupants were continuously monitored until the search of the house was completed, after 7:00 p.m. According to Chief Garrison, Troy "did show up there [at the house] and then we transported him back to the [S]heriff's [O]ffice." Troy was also arrested that day. Chief Garrison testified that "to the best of [his] recollection," Troy did not return to the house after being transported to the Sheriff's Office. Capt. Phillips testified that he interviewed Troy at the Sheriff's Office from 4:29 p.m. until 7:16 p.m., and then returned to the Meadows home. Capt. Phillips did not indicate in his testimony that he brought Troy with him when he returned to the Meadows home, and Defendant's counsel did not ask Capt. Phillips that question.
 

 Chief Garrison testified that, after serving the search warrant, he "identified a large quantity of narcotics and medications on the dining room table." Items recovered included "other pill bottles, empty pill bottles, white pills and pink pills[,]" and plastic baggies similar to the one recovered from Chandler that contained the fifty pills Shetley had purchased for him. Chief Garrison testified that, after officers had searched the house for more than three hours in an unsuccessful attempt to locate the remainder of the buy money, he confronted Defendant directly. Chief Garrison testified that he told Defendant: "I knew my buy money was in the house and I wanted to get it." According to Chief Garrison, Defendant "told me it was in a pocket, a jacket pocket in the, I believe it was the bedroom closet." Chief Garrison testified that officers recovered $380.00 from "a blue jacket hanging in a closet" that was later identified as the remaining buy money.
 

 Chief Garrison then identified State's exhibit 12 as an envelope containing the $380.00 of buy money recovered from the Meadows home. Chief Garrison read from the log sheet attached to State's exhibit 12,
 
 *128
 
 and testified that the log sheet "has [the] suspect['s] name, which is Troy Meadows, the date and time recovered which is 9/14/11 at ... 7:01 p.m. It has Detective Matt Davis was the recovering deputy. The description, it says, $380 U.S. currency recovered from back bedroom, blue jacket pocket."
 

 Although both Chief Garrison and Capt. Phillips testified they believed Defendant was involved in the 14 September 2011 transaction, Defendant was not arrested until 22 July 2013.
 
 [2]
 
 Defendant testified at trial, contradicting the testimony of Chief Garrison and Shetley. Defendant testified she had no
 
 *686
 
 knowledge of the drug transaction, that she never saw Shetley that morning, and that she did not know where the $380.00 was hidden until Troy told her sometime after 6:30 p.m. The two containers of pills were sent to the State Bureau of Investigation ("S.B.I.") lab to be analyzed by Colin Andrews, who determined the pills were oxycodone, and described them in his report as "a pill bottle containing 25 pink tablets [and] a plastic bag containing 50 pink tablets." Defendant was found guilty of all three trafficking charges on 7 April 2016. Defendant appeals.
 

 II.
 
 Analysis
 

 A. Ineffective Assistance of Counsel
 

 Defendant argues she was denied effective assistance of counsel because her defense counsel "elicited damaging testimony from [Capt.] Phillips that Shetley was 'honest[,]' " and also failed to object to Chief Garrison's testimony that "[Defendant] was as guilty as Troy was." We disagree.
 

 "A defendant's right to counsel includes the right to the effective assistance of counsel. When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness."
 
 State v. Braswell
 
 ,
 
 312 N.C. 553
 
 , 561-62,
 
 324 S.E.2d 241
 
 , 247-48 (1985) (citations omitted). However,
 

 if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient.
 

 *129
 

 Id.
 
 at 563,
 
 324 S.E.2d at 248-49
 
 . Because we hold "there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different," we reject Defendant's ineffective assistance of counsel ("IAC") arguments without making any determination concerning whether Defendant's counsel was actually deficient.
 
 Id.
 
 at 563,
 
 324 S.E.2d at 249
 
 .
 

 1.
 
 Vouching for Shetley's Credibility
 

 Concerning Defendant's first argument, her counsel questioned Capt. Phillips concerning two interviews he conducted with Shetley after Shetley's arrest:
 

 Q. My question was, when you conducted that first interview [on 14 September 2011], did you feel, leaving that interview did you feel or form an opinion as to whether or not [Shetley] was being honest with you?
 

 A. Yes, sir, I did.
 

 Q. So you felt after that first interview he was telling you the truth?
 

 A. No, sir.
 

 ....
 

 Q. So at that time you had an idea, hey, this isn't, this doesn't make sense.
 

 A. Yes, sir.
 

 ....
 

 Q. Did you during that first interview ask [Shetley] about his drug use at the time?
 

 A. Yes, sir, I did.
 

 Q. And what was his response to, to whether or not he used drugs?
 

 A. He said he didn't use drugs.
 

 ....
 

 Q. And [Shetley] gave you another statement [on 16 September 2011], did he not?
 

 A. He did, yes, sir.
 

 *130
 
 Q. Did he at that time admit or deny having a drug problem?
 

 A. At this point he admitted it, yes, sir.
 

 ....
 

 Q. And again, [Shetley] admitted to you that he had a very bad drug problem.
 

 A. Yes, sir, he stated he had a pill problem.
 

 Q. And based on your knowledge and experience as a law enforcement officer, do people with drug problems typically break into other people's houses to supply their habit?
 

 A. Sometimes.
 

 Q. Did Mr. Shetley admit that to you?
 

 A. Yes, sir.
 

 ....
 

 Q. And you filled out this Officers Investigation Report as lead detective.
 

 A. Yes, sir.
 

 Q. And part 10, you stated that ... Davis was honest and cooperative.
 

 *687
 
 A. Yes, sir.
 

 Q. And that Troy ... and ... Shetley were also honest with Detective ... Phillips.
 

 A. Yes, sir.
 

 Q. And you signed that form on 9/19.
 

 A. Yes, sir.
 

 ....
 

 Q. And at that time the statements, the follow-up statements, at least with Shetley, and the other statements you got, you felt that the witnesses were honest and cooperative.
 

 A. Yes, sir.
 

 *131
 
 Based upon the testimony above, Defendant argues that her counsel's representation was deficient because he "elicited damaging testimony from [Capt.] Phillips that Shetley was 'honest.' " However, because we do not believe Defendant can show the necessary prejudice to sustain her IAC claim, as we will discuss in greater detail below, we do not need to consider whether Defendant's counsel's representation of Defendant was actually deficient.
 
 Braswell
 
 ,
 
 312 N.C. at 563
 
 ,
 
 324 S.E.2d at 248-49
 
 .
 

 2.
 
 Chief Garrison's Opinion of Defendant's Guilt
 

 Defendant next argues that her counsel committed IAC by failing to object when Chief Garrison testified: "I felt like [Defendant] should be charged at that time; she was as guilty as Troy was." We disagree.
 

 Law enforcement officers may not express any opinion that they believe a defendant to be guilty of the crimes for which the defendant is on trial.
 
 State v. Carrillo
 
 ,
 
 164 N.C. App. 204
 
 , 211,
 
 595 S.E.2d 219
 
 , 224 (2004). However, although the admission of the statement by Chief Garrison constituted error, as in
 
 Carrillo
 
 , we hold that Defendant fails to show that the error was so prejudicial, on the facts before us, as to require a new trial.
 

 Id.
 

 Initially, during direct questioning by the State concerning why Defendant was not arrested on 14 September 2011, Chief Garrison testified to the following, without objection:
 

 Q. Chief Garrison, was there some-I'm going to follow up on a couple of [Defendant's counsel's] questions. Was there some discussion of [Defendant] being charged back in September of 2011?
 

 A. There was.
 
 Initially I felt that [Defendant] had direct involvement in the drug transaction, and based on that that she should have been charged accordingly.
 
 There was a discussion and based on that discussion we made a determination not to charge her at that time. Subsequently, uh, I'm trying to think, it was probably a little over a year and four months later we submitted the evidence to the SBI and the SBI labs came back as far as what the quantities and the product were as far as the pills. Determination was made at that time to pursue a grand jury indictment, which we did, and the grand jury found probable cause to have her indicted, and that's what brought her here today. (Emphasis added).
 

 *132
 
 Defendant does not argue on appeal that failure to object to this testimony constituted IAC. Therefore, any such argument has been abandoned, and we must evaluate the prejudice of the contested testimony in light of this uncontested testimony.
 
 See
 
 N.C. R. App. P. 28(b)(6) ;
 
 State v. Evans
 
 , --- N.C. App. ----, ----,
 
 795 S.E.2d 444
 
 , 455 (2017).
 

 Immediately following the above exchange, the State continued:
 

 Q. So you [Chief Garrison] said that the conversation that you had [with other officers] back in September 2011 was not to never charge [Defendant], it was just not to charge her at the time?
 

 A. The conversation was I felt like [Defendant] should be charged at that time; she was as guilty as Troy was. However, after we had a discussion about it and we made a determination collectively not to pursue that at that time.
 

 Defendant's counsel also failed to object to this testimony, which is not substantially different from the unchallenged prior testimony. Chief Garrison's prior testimony clearly indicated he believed, from the beginning, that Defendant was "direct[ly] involve[ed] in the drug transaction, and based on that that she should have been charged accordingly." Chief Garrison's later testimony-that he believed
 
 *688
 
 Defendant "was as guilty as Troy was[,]"-does not contribute significantly to any prejudice already suffered by Defendant from the unchallenged statement.
 

 Further, we find that the evidence against Defendant was substantial. Comparing the facts before us with those in
 
 Carrillo
 
 ,
 
 supra
 
 , we find the evidence against Defendant at least as compelling as that in
 
 Carrillo
 
 . In
 
 Carrillo
 
 , two officers testified, without objection, in ways that strongly indicated their opinion that the defendant was guilty of trafficking in cocaine. Although this Court held that admission of testimony indicating the officers believed the defendant was guilty constituted error, we concluded, in light of the following evidence, that the defendant failed to demonstrate the improper testimony was sufficiently prejudicial to warrant a new trial pursuant to either plain error analysis or IAC:
 

 Evidence at trial showed that the package was intercepted by the U.S. Customs agents and contained three ceramic turtles with a substantial amount of cocaine concealed inside. The package was mailed from a location in Mexico that U.S. Customs agents had identified as a mail origination point for cocaine sent to the United States. The package
 
 *133
 
 was addressed to defendant at his residence. Defendant accepted the package. It was found inside his residence minutes after he had taken possession of it. Broken pieces of similar turtles containing traces of cocaine were also found inside his apartment.
 

 Carrillo
 
 ,
 
 164 N.C. App. at 210-11
 
 ,
 
 595 S.E.2d at 224
 
 . This Court held in
 
 Carrillo
 
 that the defendant had failed to prove plain error, then summarily overruled the defendant's argument that his counsel's failure to object to the officers' testimonies constituted IAC:
 

 If we were to conclude there was a reasonable probability that the outcome would have been different, this Court [would have to] consider whether counsel's actions were in fact deficient. As we have already determined, defendant has failed to show [plain error-] that a different outcome at trial would have occurred if defense counsel had objected to this testimony. This [argument] is overruled.
 

 Id.
 
 at 211,
 
 595 S.E.2d at 224
 
 .
 

 In the present case, the relevant evidence presented at trial, discussed in part above, is sufficient to defeat Defendant's claim of IAC. Defendant testified she was in a back bedroom at the time Shetley entered the house because her back was bothering her and she could not move. In addition, Defendant initially testified that Troy was gone from the house from some time before 9:30 a.m. until he returned at approximately 11:30 a.m., and that Troy was accompanied by officers when he entered the house. She further testified she did not see or hear anyone in the house until Troy returned at 11:30 a.m. After Troy returned to the house, he was subsequently taken to the Sheriff's Office and arrested.
 

 Defendant further testified that, though she knew the officers were searching for money, she had no knowledge whatsoever of any cash that might have been used in a drug transaction
 
 until after 6:30 p.m.
 
 Defendant testified that Officer Davis questioned her on her front porch, and "showed me four or five ... pink ... pills ..., and ... he said, does [Troy] sell his medicine every month? I said, I wouldn't worry, there's so many. And he said, does he take these? And I said, I've never seen those [pink pills] in my home[,]" that the oxycodone that Troy was prescribed were white pills. However, the pink pills recovered from Chandler and Shetley were determined to be oxycodone by the SBI, and additional pink pills were recovered from the dining table when the house was searched.
 

 *134
 
 According to Defendant, after Troy was taken to the Sheriff's Office the first time, he was returned by Sheriff Buddy Harwood ("Sheriff Harwood") and Capt. Phillips at approximately 6:30 p.m. Defendant testified that she first learned about the hidden money during a conversation with Troy, at around 6:30 p.m., in which Sheriff Harwood participated. Defendant further testified that she never told Chief Garrison about the location of the money-that it was only Sheriff Harwood who was informed of the location of the $380.00. Defendant testified that Troy was present at the house when the money was recovered and that, once she and her
 
 *689
 
 daughter recovered the money, they handed it to Capt. Phillips.
 

 However, after reviewing his report, Capt. Phillips testified that he began interviewing Troy at the Sheriff's Office at 4:29 p.m. on 14 September 2011, and did not conclude the interview
 
 until 7:16 p.m.
 
 It was only after concluding that interview with Troy at 7:16 p.m. that Capt. Phillips returned to the Meadows home. There was no testimony from anyone other than Defendant that Troy returned to the house after he was interviewed at the Sheriff's Office. The log sheet that accompanied an evidence bag that contained the $380.00, indicated that the money was recovered from the Meadows home
 
 at 7:01 p.m.
 
 by Detective Davis. According to those two documents, Defendant could not have discussed the whereabouts of the buy money with Troy at approximately 6:30 p.m., because Troy was at the Sheriff's Office in the middle of an approximately three-hour interview with Capt. Phillips. More importantly, Troy was still at the Sheriff's Office being interviewed by Capt. Phillips at the time the $380.00 was recovered from a jacket pocket in a back bedroom closet of the Meadows home.
 

 According to Defendant's testimony, after Sheriff Harwood was informed where the money was located, Defendant "told [Sheriff Harwood] that [she would] tell my daughter where the money was at and she could go get it." Defendant testified that neither Sheriff Harwood nor Capt. Phillips made any effort to have officers escort her to retrieve the money. Defendant's own counsel asked Defendant: "So you're telling me that at some point in time you got off the couch and went in the back room with no officer watching you?" Defendant answered that was correct, that she and her daughter retrieved the money without escort of any kind. The $380.00 recovered was later confirmed to be the remainder of the buy money. That Defendant would be sent unescorted to retrieve the main evidence in the investigation defies logic, protocol as testified to by Chief Garrison, and what actually occurred as testified to by Chief Garrison. Chief Garrison testified that he "stood guard" with Defendant
 
 *135
 
 during the search, and that Officer Davis was the officer who recovered the $380.00 from the jacket in the bedroom closet.
 

 Defendant's own testimony cannot explain how the $380.00 in buy money could have been placed in a jacket pocket in a back room closet by anyone other than herself. All the evidence shows that Shetley entered the Meadows home with $400.00 of the buy money and left with only $20.00, which was recovered from Shetley when the car was stopped. Therefore, the $380.00 of buy money recovered from the Meadows home had to have been left in the home by Shetley between 9:45 a.m. and 9:50 a.m., at the same time he acquired the seventy-five pills of oxycodone, and at a time Defendant herself testified she was alone in the house. Shetley had no opportunity to give the $380.00 to Troy, and when Troy returned to the house before his arrest, he was accompanied by officers, and not allowed to freely roam the house. Assuming,
 
 arguendo
 
 , Troy did return to the house a second time, according to Capt. Phillips' report and testimony, it would have to have been after the buy money was already recovered.
 

 On the facts before us, because we hold "that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different," we reject Defendant's argument and need not "determine whether counsel's performance was actually deficient."
 
 Braswell
 
 ,
 
 312 N.C. at 563
 
 ,
 
 324 S.E.2d at 249
 
 . This argument is without merit.
 

 B. Sentencing
 

 Defendant argues four errors were committed at her sentencing hearing. Defendant argues the trial court erred in Defendant's sentencing because a judge-different from the judge who presided over the trial-issued the sentence and improperly "overruled" a prior order of the trial judge. Defendant also argues that the trial court "abused [its] discretion by imposing consecutive sentences of 70 to 93 months on a 72-year-old first offender for a single drug transaction," and that this sentence violated Defendant's Eighth Amendment right that her sentence be proportional to her crime. We disagree.
 

 Defendant did not object to any of these alleged errors at her sentencing hearing.
 

 *690
 
 North Carolina Rule of Appellate Procedure Rule 10(a)(1) states:
 

 In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the
 
 *136
 
 ruling the party desired the court to make if the specific grounds were not apparent from the context.
 

 N.C. R. App. P. 10(a)(1) (2015).
 
 [3]
 
 Despite her failure to object, Defendant makes no argument in her brief indicating why we should address the first two alleged errors-that a judge different from the judge who presided over the trial issued the sentence and improperly "overruled" a prior order of the trial judge. Concerning Defendant's remaining arguments-that her long sentence constituted an abuse of discretion and violated the Eighth Amendment-she contends: "An error at sentencing [including a constitutional claim] may be reviewed on appeal, absent an objection in the court below.
 
 State v. Pettigrew
 
 ,
 
 204 N.C. App. 248
 
 , 258,
 
 693 S.E.2d 698
 
 , 704-05 (2010)."
 

 1.
 
 Rule 10(a)(1) and State v. Canady
 

 We assume,
 
 arguendo
 
 , that Defendant contends that all of her arguments are preserved without objection because they allegedly occurred at sentencing.
 
 See
 

 Id
 
 . Defendant is correct that this Court addressed the defendant's argument in
 
 Pettigrew
 
 , even though the defendant had not raised his objection at his sentencing hearing. This Court reasoned:
 

 The State argues that [the d]efendant has not preserved this issue for appellate review because [the d]efendant did not raise [his] constitutional issue at trial. However, in
 
 State v. Curmon
 
 ,
 
 171 N.C. App. 697
 
 ,
 
 615 S.E.2d 417
 
 (2005), our Court held that "[a]n error at sentencing is not considered an error at trial for the purpose of Rule 10 [ (a) ](1) because this rule is directed to matters which occur at trial and upon which the trial court must be given an opportunity to rule in order to preserve the question for appeal." Accordingly, [the d]efendant was not required to object at sentencing to preserve this issue on appeal.
 

 Pettigrew
 
 ,
 
 204 N.C. App. at 258
 
 ,
 
 693 S.E.2d at 704-05
 
 (citations omitted).
 
 Curmon
 
 cited
 
 State v. Hargett,
 

 157 N.C. App. 90
 
 , 93,
 
 577 S.E.2d 703
 
 , 705 (2003), which in turn cited our Supreme Court's opinion in
 
 *137
 

 State v. Canady,
 

 330 N.C. 398
 
 , 401,
 
 410 S.E.2d 875
 
 , 878 (1991). Our research shows that
 
 Canady
 
 is the genesis of a line of opinions from this Court that contend Rule 10(a)(1) does not apply in sentencing hearings.
 

 However, this Court has also regularly held, post-
 
 Canady
 
 , that objection to alleged errors at sentencing
 
 is required in order to preserve them for appellate review
 
 .
 
 See, e.g.,
 

 State v. Baldwin
 
 ,
 
 240 N.C. App. 413
 
 , 421-22,
 
 770 S.E.2d 167
 
 , 173-74 (2015) ;
 
 State v. Phillips
 
 ,
 
 227 N.C. App. 416
 
 , 422,
 
 742 S.E.2d 338
 
 , 342-43 (2013) ;
 
 State v. Facyson
 
 ,
 
 227 N.C. App. 576
 
 , 582,
 
 743 S.E.2d 252
 
 , 256 (2013) ; and
 
 State v. Flaugher
 
 ,
 
 214 N.C. App. 370
 
 , 388,
 
 713 S.E.2d 576
 
 , 590 (2011). In
 
 State v. Freeman
 
 , this Court's holding directly contradicts the
 
 Canady
 
 analysis in
 
 Pettigrew
 
 and Defendant's Eighth Amendment argument in the present case:
 

 Defendant further argues that his sentence is grossly disproportionate to the severity of the crime and violates the Eighth Amendment prohibition against cruel and unusual punishment. Defendant did not object at trial, however, and "constitutional arguments will not be considered for the first time on appeal.".... Defendant has failed to preserve his Eighth Amendment argument, and we dismiss defendant's assignment of error.
 

 State v. Freeman
 
 ,
 
 185 N.C. App. 408
 
 , 414,
 
 648 S.E.2d 876
 
 , 881 (2007) (citations omitted);
 
 see also
 

 State v. Lewis
 
 ,
 
 231 N.C. App. 438
 
 , 444,
 
 752 S.E.2d 216
 
 , 220 (2013). In light of this conflict between opinions of this Court concerning treatment of the failure to object to errors during sentencing hearings in the
 
 *691
 
 wake of
 
 Canady
 
 , we must attempt to determine the correct precedent to apply in the present case.
 
 [4]
 
 Because it is this Court's occasional application of certain wording in
 
 Canady
 
 that has resulted in a lack of uniformity in some of this Court's opinions, we first analyze
 
 Canady
 
 . In
 
 Canady
 
 , the defendant's sole argument was "that it was error for the [trial] court to rely on the statement of the prosecuting attorney in finding the aggravating factor."
 
 Canady
 
 ,
 
 330 N.C. at 399
 
 ,
 
 410 S.E.2d at 876
 
 . This was essentially an argument that there was insufficient evidence to support the sole aggravating factor found by the trial court. However, the defendant failed to object to this error at his sentencing hearing.
 
 Id.
 
 at 400,
 
 410 S.E.2d at 877
 
 .
 

 For reasons we will discuss in greater detail below, a majority of our Supreme Court held that the error had been properly preserved
 
 *138
 
 for appellate review despite the defendant's lack of objection at the sentencing hearing. Justice Meyer dissented based upon,
 
 inter alia
 
 , his belief that, pursuant to Rule 10(a)(1), the defendant's failure to object at the sentencing hearing constituted a waiver of his right to appellate review: "What the majority fails to recognize, however, is that Rule 10 [ (a) ](1) ... limits this Court's appellate review to exceptions which have been
 
 properly preserved
 
 for review."
 
 Canady
 
 ,
 
 330 N.C. at 404
 
 ,
 
 410 S.E.2d at 879
 
 (Justice Meyer dissenting). Justice Meyer cautioned: "The majority today discards our longstanding rules of appellate procedure."
 
 Id.
 
 at 406,
 
 410 S.E.2d at 880
 
 .
 

 The majority in
 
 Canady
 
 then addressed and dismissed the concerns of Justice Meyer on two different bases:
 

 Assuming Rule 10 requires an exception to be made to the finding of an aggravating factor, we hold the defendant has complied with the Rule. At the time of sentencing the judge said, "[f]or the record, the Court did take into consideration two previous felony convictions, possession of marijuana and LSD, and a charge of escape from the department of corrections." The defendant marked an exception to this statement and made it the subject of an assignment of error. This was sufficient to preserve the question for appellate review.
 

 Justice Meyer in his dissent relies on Rule 10 [ (a) ](1) of the Rules of Appellate Procedure and argues that an objection to the finding of the aggravating factor should have been made at the time the factor was found.
 

 ....
 

 [ Rule 10(a)(1) ] does not have any application to this case. It is directed to matters which occur at trial and upon which the trial court must be given an opportunity to rule in order to preserve the question for appeal. The purpose of the rule is to require a party to call the [trial] court's attention to a matter upon which he or she wants a ruling before he or she can assign error to the matter on appeal. If we did not have this rule, a party could allow evidence to be introduced or other things to happen during a trial as a matter of trial strategy and then assign error to them if the strategy does not work. That is not present in this case.
 
 The defendant did not want the [trial] court to
 

 *139
 

 find the aggravating factor, and the [trial] court knew or should have known it. This is sufficient to support an [argument on appeal]
 
 .
 

 ....
 

 [W]e have held that Rule 10 [ (a) ](1) does not apply to this case. We base this holding on our knowledge of the way our judicial system works. As we understand the dissent by Justice Meyer, he would require a party to object to any finding of fact in a judgment at the time the finding of fact is made. This would be a near impossibility in many cases in which the court renders a judgment at some time after the trial is concluded. We do not believe it was the intention of Rule 10 [ (a) ](1) to impose such a requirement. We shall not require that after a trial is completed and a judge is preparing a judgment or making findings of aggravating factors in a criminal case, that a party object as each fact or factor is found in order to preserve the question for appeal.
 

 *692
 

 Id.
 
 at 401-02,
 
 410 S.E.2d at 877-78
 
 (citations omitted). Though we see how the language used in
 
 Canady
 
 could lead to misapplication of its holding, in our reading, the holding appears to be fairly limited. First, the Court held that, if Rule 10 applied in that case, the defendant sufficiently complied with it. Second, and more relevant to the present case, the Court did not state that Rule 10(a)(1) never applied to sentencing hearings. The Court stated, "we have held that Rule 10 [ (a) ](1) does not apply to
 
 this case
 
 ."
 
 Id.
 
 at 402,
 
 410 S.E.2d at 878
 
 (emphasis added). This language does not indicate that the Court did not consider sentencing hearings to be a part of the trial-a fact that is further supported by the Court's explanation of the purpose of Rule 10(a)(1), which purpose is just as valid at a sentencing hearing as it is at the guilt/innocence phase of the trial. The Court explained:
 

 We do not believe it was the intention of Rule 10 [ (a) ](1) to impose ... a requirement.... that after a trial is completed and a judge is preparing a judgment or making findings of aggravating factors in a criminal case, that a party object as each fact or factor is found in order to preserve the question for appeal.
 

 Id.
 
 at 402,
 
 410 S.E.2d at 878
 
 . This holding merely states that Rule 10(a)(1) does not apply after the proceedings have concluded-including the
 
 *140
 
 sentencing hearing-and the trial court is in the process of memorializing its judgment.
 
 [5]
 

 However, this Court has read
 
 Canady
 
 much more broadly. The first opinion to cite
 
 Canady
 
 for the proposition that Rule 10(a)(1) does not apply to sentencing hearings was
 
 Hargett
 
 , in which this Court considered the defendant's double jeopardy argument even though he had failed to object at sentencing:
 

 Defendant failed to object to the sentencing at trial. N.C. Rule 10 [ (a) ](1) requires an objection at trial for preservation of an issue on appeal. Our Supreme Court has held that
 
 an error at sentencing is not considered an error at trial for the purpose of N.C. Rule 10 [ (a) ](1)
 
 of the North Carolina Rules of Appellate Procedure.
 
 State v. Canady
 
 ,
 
 330 N.C. 398
 
 ,
 
 410 S.E.2d 875
 
 (1991).
 

 Hargett
 
 ,
 
 157 N.C. App. at 92
 
 ,
 
 577 S.E.2d at 705
 
 (emphasis added). Following the precedent set in
 
 Hargett
 
 ,
 
 Canady
 
 has continued to be interpreted by this Court, intermittently, as including a blanket holding that any error at sentencing is preserved for appellate review even absent objection because Rule 10(a)(1) does not apply at sentencing.
 
 See
 

 State v. McNair
 
 , --- N.C. App. ----,
 
 797 S.E.2d 712
 
 (2017) (unpublished);
 
 State v. Dove
 
 , --- N.C. App. ----,
 
 790 S.E.2d 755
 
 (2016) (unpublished);
 
 State v. Allah
 
 ,
 
 231 N.C. App. 88
 
 , 97,
 
 750 S.E.2d 903
 
 , 910 (2013) (citation omitted) ("Admittedly, N.C. R. App. P. 10(a)(1) provides that, as a general proposition, a party must have raised an issue before the trial court before presenting it to this Court for appellate review. However, according to well-established North Carolina law, N.C. R. App. P. 10(a)(1) does not apply to sentencing-related issues.").
 

 We do not believe
 
 Hargett
 
 correctly states the holding in
 
 Canady
 
 ; at a minimum,
 
 Canady
 
 does not include language similar to that ascribed to it in
 
 Hargett
 
 . The next opinion to cite
 
 Canady
 
 summarized the
 
 Canady
 
 holding in a manner more in line with the particular facts of
 
 Canady
 
 , and suggested that the defendant had failed to preserve his argument for appellate review by failing to object at sentencing:
 

 We note that the defendant
 
 cannot
 
 argue insufficient evidence [to support amount of restitution ordered] when
 
 *141
 
 there was no objection at trial, and no other way for the court to be alerted to defendant's position that the determination was wrong.
 
 See
 

 State v. Canady
 
 ,
 
 330 N.C. 398
 
 ,
 
 410 S.E.2d 875
 
 (1991) (court allowed argument on appeal that aggravating factor was in error even without objection
 
 when defendant had argued for the minimum
 

 sentence, thus alerting the judge that he didn't want the aggravating factor
 
 ).
 

 State v. Dickens
 
 ,
 
 161 N.C. App. 742
 
 ,
 
 590 S.E.2d 24
 
 ,
 
 2003 WL 22952108
 
 , at *3 (2003) (unpublished) (emphasis added). This Court
 
 *693
 
 applied a more limited holding from
 
 Canady
 
 in subsequent opinions as well:
 

 While it is true that defendant must normally make specific objections to preserve issues on appeal, our Supreme Court has stated "We shall not require that
 
 after a trial is completed and a judge is preparing a judgment or making findings of aggravating factors
 
 in a criminal case, that a party object as each fact or factor is found in order to preserve the question for appeal."
 
 State v. Canady
 
 ,
 
 330 N.C. 398
 
 , 402,
 
 410 S.E.2d 875
 
 , 878 (1991). The
 
 Canady
 
 Court further held that when a defendant argues for sentencing in the mitigated range, no further objection is required to preserve the issue on appeal when the trial judge sentences her in the aggravated range.
 

 Id.
 

 In the case at bar, defendant argued for a sentence in the mitigated range, but was sentenced from the aggravated range. She properly preserved her right to appeal the trial court's determination of aggravating and mitigating factors.
 

 State v. Byrd
 
 ,
 
 164 N.C. App. 522
 
 , 526,
 
 596 S.E.2d 860
 
 , 862-63 (2004) (emphasis added);
 
 see also
 

 State v. Borders
 
 ,
 
 164 N.C. App. 120
 
 , 124,
 
 594 S.E.2d 813
 
 , 816 (2004) (citation omitted) (
 
 Canady
 
 held that preserving review of the trial court's finding of non-statutory aggravating factors for appellate review by objecting "is unnecessary because it is clear that a defendant does 'not want the [trial] court to find [an] aggravating factor and the [trial] court kn[ows] or should ... know[ ] it' "). This Court has also applied Rule 10(a)(1) requirements without mentioning
 
 Canady
 
 .
 
 See
 

 State
 

 v. Jamison
 
 ,
 
 234 N.C. App. 231
 
 , 237,
 
 758 S.E.2d 666
 
 , 671 (2014) ;
 
 State v. Martin
 
 ,
 
 222 N.C. App. 213
 
 , 218-19,
 
 729 S.E.2d 717
 
 , 722 (2012) ;
 
 Freeman
 
 ,
 
 185 N.C. App. at 413-14
 
 ,
 
 648 S.E.2d at 881
 
 . Finally, in
 
 State v. Pimental
 
 ,
 
 165 N.C. App. 547
 
 ,
 
 600 S.E.2d 898
 
 ,
 
 2004 WL 1622290
 
 , at *2 (2004) (unpublished), this Court actually cited
 
 Hargett
 
 and
 
 Canady
 

 *142
 

 in support
 
 of its holding that the State could not challenge sentencing issues that it had failed to object to at trial.
 

 We acknowledge that in
 
 State v. Culross
 
 , this Court, in an unpublished opinion, rejected a request to review the line of cases applying the
 
 Hargett
 
 interpretation of
 
 Canady
 
 , holding that we were bound by this Court's interpretation in
 
 Hargett
 
 :
 

 [T]he State contends that the rule applied in
 
 Owens
 

 [6]
 
 [which cites
 
 Hargett
 
 ], i.e. that a Defendant need not preserve errors during sentencing by objection or motion, is based on this Court's misinterpretation of our Supreme Court's opinion in
 
 Canady
 
 ,
 
 supra
 
 . The State's argument is misplaced, however. Whether a misinterpretation or not, this Court has "repeatedly applied
 
 Canady
 
 to reject contentions that a challenge to a sentence on appeal is precluded by a failure to object below." "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."
 
 In the Matter of Appeal from Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989). Further, "[w]hile we recognize that a panel of the Court of Appeals may disagree with, or even find error in, an opinion by a prior panel ... the panel is bound by that prior decision until it is overturned by a higher court."
 

 State v. Culross
 
 ,
 
 217 N.C. App. 400
 
 ,
 
 720 S.E.2d 30
 
 ,
 
 2011 WL 6046692
 
 , at *2 (2011) (citations omitted) (unpublished). While
 
 Culross
 
 correctly states the law, it is an incomplete statement of the law.
 

 First, precisely because of
 
 In re Civil Penalty
 
 , when there are conflicting lines of opinions from this Court, we generally look to our earliest relevant opinion in order to resolve the conflict. As indicated above,
 
 Hargett
 
 is the earliest opinion of this Court that we can locate holding that Rule 10(a)(1) does not apply in sentencing hearings.
 
 However
 
 , we find multiple prior opinions of this Court, filed between
 
 Canady
 
 -which was filed on 6 December 1991-and
 
 Hargett
 
 -which was filed on 1 April 2003-that
 
 declined to review alleged errors at sentencing when the defendant had failed to object as required by
 

 *143
 

 Rule 10 (a)(1)
 
 .
 
 See, e.g
 
 .,
 
 State v. Love
 
 ,
 
 156 N.C. App. 309
 
 , 317-18,
 
 576 S.E.2d 709
 
 , 714 (2003) ;
 
 *694
 

 State v. Williams
 
 ,
 
 149 N.C. App. 795
 
 , 799,
 
 561 S.E.2d 925
 
 , 927 (2002) ;
 
 State v. Hilbert
 
 ,
 
 145 N.C. App. 440
 
 , 445,
 
 549 S.E.2d 882
 
 , 885 (2001) ;
 
 State v. Clifton
 
 ,
 
 125 N.C. App. 471
 
 , 480,
 
 481 S.E.2d 393
 
 , 398-99 (1997) ;
 
 State v. Evans
 
 ,
 
 125 N.C. App. 301
 
 , 304,
 
 480 S.E.2d 435
 
 , 436-37 (1997) ("[The d]efendant lastly contends that the trial court abused its discretion by finding certain mitigating factors in one judgment but failing to do so in the other judgments. However, a party must present to the trial court a timely request, objection or motion in order to preserve a question for appellate review. N.C. R. App. P. 10 [ (a) ](1)."). This Court, in
 
 Hargett
 
 and in subsequent opinions relying on
 
 Hargett
 

 's
 
 interpretation of
 
 Canady
 
 , was without authority to "overrule" prior cases of this Court, filed after
 
 Canady
 
 , that consistently held Rule 10(a)(1) applied during sentencing hearings.
 
 In re Civil Penalty
 
 ,
 
 324 N.C. at 384
 
 ,
 
 379 S.E.2d at 37
 
 .
 

 Second, and more definitively, any conflict between this Court and our Supreme Court must be resolved in favor of our Supreme Court. Although this Court has cited
 
 Canady
 
 at least forty times, many of which involve that opinion's analysis of Rule 10, our Supreme Court has only cited
 
 Canady
 
 three times, and two of those citations did not involve Rule 10 whatsoever. The single Supreme Court opinion citing
 
 Canady
 
 concerning Rule 10 is a civil case, which cites
 
 Canady
 
 for the general proposition that the purpose of Rule 10(a)(1) is to preclude appeal from issues that were not first brought to the attention of the trial court.
 
 Reep v. Beck
 
 ,
 
 360 N.C. 34
 
 , 36-37,
 
 619 S.E.2d 497
 
 , 499-500 (2005).
 

 Contrary to the
 
 Hargett
 
 line of cases from this Court, our Supreme Court has continuously enforced the requirements of Rule 10(a)(1) with respect to sentencing hearings post-
 
 Canady
 
 , and has never applied
 
 Canady
 
 in order to circumvent Rule 10(a)(1) in sentencing hearings. For example, in
 
 State v. Golphin
 
 ,
 
 352 N.C. 364
 
 ,
 
 533 S.E.2d 168
 
 (2000), our Supreme Court held that multiple alleged errors at sentencing had not been preserved for appellate review as required by Rule 10(a)(1). First, our Supreme Court refused to review two defendants' arguments that their sentencing hearings should not have been joined because the defendants had not objected at trial. The Court discussed one of the defendant's failure to object in the following manner:
 

 [Defendant] Tilmon never actually renewed his prior motion to sever, nor did he object to joinder of the cases for sentencing. Therefore, the trial court never ruled on this issue. Tilmon's purported efforts, during the sentencing phase, to revive his previous motion to sever were insufficient to satisfy N.C. R. App. P. 10 to preserve appellate review of this issue.
 

 *144
 

 Id.
 
 at 460-61,
 
 533 S.E.2d at
 
 231 ;
 
 [7]
 

 Id.
 
 at 463,
 
 533 S.E.2d at
 
 232 ;
 
 Id.
 
 at 464,
 
 533 S.E.2d at
 
 233 ;
 
 Id.
 
 at 465,
 
 533 S.E.2d at
 
 234 ;
 
 Id
 
 . at 481,
 
 533 S.E.2d at
 
 243 ;
 
 see also
 
 ,
 
 e.g.,
 

 State v. Augustine
 
 ,
 
 359 N.C. 709
 
 , 731,
 
 616 S.E.2d 515
 
 , 531 (2005) ;
 
 State v. Roache
 
 ,
 
 358 N.C. 243
 
 , 326,
 
 595 S.E.2d 381
 
 , 433 (2004) ;
 
 State v. Walters
 
 ,
 
 357 N.C. 68
 
 , 91,
 
 588 S.E.2d 344
 
 , 358 (2003) ;
 
 State v. Davis
 
 ,
 
 353 N.C. 1
 
 , 20,
 
 539 S.E.2d 243
 
 , 257 (2000) (citation omitted) (the "defendant failed to make an objection at [the sentencing hearing] on constitutional grounds. This failure to preserve the issue results in waiver. N.C. R. App. P. 10(b)(1)");
 
 State v. Smith
 
 ,
 
 352 N.C. 531
 
 , 557-58,
 
 532 S.E.2d 773
 
 , 790 (2000) ;
 
 State v. McNeil
 
 ,
 
 350 N.C. 657
 
 , 681,
 
 518 S.E.2d 486
 
 , 501 (1999) ;
 
 State v. Thomas
 
 ,
 
 350 N.C. 315
 
 , 363,
 
 514 S.E.2d 486
 
 , 515 (1999) ;
 
 State v. Flippen
 
 ,
 
 349 N.C. 264
 
 , 276,
 
 506 S.E.2d 702
 
 , 710 (1998).
 

 This Court has declined to follow
 
 Hargett
 
 based upon that opinion's conflict with opinions of our Supreme Court in at least two prior occasions. In
 
 State v. Williams
 
 , in declining to address a double jeopardy issue to which the defendant had failed to object at sentencing, this Court recognized:
 

 Hargett
 
 ... is inconsistent with numerous Supreme Court cases holding that a double jeopardy argument cannot be raised for the first time on appeal.
 
 See, e.g.,
 

 *695
 

 State v. Davis
 
 ,
 
 364 N.C. 297
 
 , 301,
 
 698 S.E.2d 65
 
 , 67 (2010) ("To the extent defendant relies on constitutional double jeopardy principles, we agree that his argument is not preserved because [c]onstitutional questions not raised and passed on by the trial court will not ordinarily be considered on appeal."). Because we are bound to follow the Supreme Court, we hold that defendant's argument is not preserved.
 

 State v. Williams
 
 ,
 
 215 N.C. App. 412
 
 , 425,
 
 715 S.E.2d 553
 
 , 561 (2011) (citations omitted);
 
 see also
 

 Flaugher
 
 ,
 
 214 N.C. App. at 388
 
 ,
 
 713 S.E.2d at 590
 
 (
 
 Hargett
 
 is inconsistent with Supreme Court cases holding that a defendant cannot raise a sentencing-based constitutional argument for the first time on appeal-because the defendant failed to raise double jeopardy issue at sentencing, issue was not preserved for appellate review). "Because we are bound to follow the Supreme Court," our Supreme Court's unabated application of Rule 10(a)(1) to sentencing
 
 *145
 
 hearings post-
 
 Canady
 
 must control over opinions of this Court holding otherwise.
 
 Williams
 
 ,
 
 215 N.C. App. at 425
 
 ,
 
 715 S.E.2d at 561
 
 .
 
 [8]
 

 2.
 
 Failure to Continue Sentencing
 

 Defendant's first two arguments-that the trial court erred in Defendant's sentencing because a judge different from the one who presided over the trial issued the sentence, and the sentencing judge improperly "overruled" a prior order of the trial judge-are essentially arguments that the trial court erred in failing to continue sentencing until the original trial court judge was available to conduct the sentencing hearing. We do not address Defendant's arguments because they have not been preserved for appellate review.
 

 When Defendant presented for sentencing, her counsel indicated Defendant was ready and prepared to proceed. Defendant did not request a continuance, nor did she make any objection to the commencement of sentencing. When the trial court asked at the conclusion of sentencing if Defendant's counsel had any questions, Defendant's counsel responded: "None from the defense." Our Supreme Court rejected a similar argument in
 
 State v. Call
 
 , in which the "defendant contend[ed] the trial court committed reversible error by failing to exercise its discretion when it declined to continue defendant's capital sentencing proceeding."
 
 State v. Call
 
 ,
 
 353 N.C. 400
 
 , 415,
 
 545 S.E.2d 190
 
 , 200 (2001). Our Supreme Court refused to review the defendant's argument because
 

 [t]he record ... demonstrates that defendant neither requested a continuance nor objected to the trial court's response to the prosecutor's suggested course of action.
 
 [9]
 
 Thus, the trial court was never called upon by defendant to exercise its discretion, and defendant has failed to preserve this issue for appellate review. See
 
 *146
 
 N.C. R. App. P. 10 [ (a) ](1);
 
 State v. Smith
 
 ,
 
 352 N.C. 531
 
 , 557-58,
 
 532 S.E.2d 773
 
 , 790 (2000). Accordingly, this [argument] is rejected.
 

 Call
 
 , 353 N.C. at 415-16,
 
 545 S.E.2d at 200-01
 
 .
 

 We hold that Defendant has waived any argument that the sentencing hearing should not have been conducted at that particular time, or in front of that particular judge, by failing to either object to the commencement of the hearing, or request a continuance thereof.
 
 Id.
 
 at 415-16,
 
 545 S.E.2d at 200-01
 
 . This argument is without merit.
 

 3.
 
 Eighth Amendment
 

 Defendant argues that imposition of "consecutive sentences of 70 to 93 months on a 72-year-old first offender for a single drug transaction" violated Defendant's Eighth Amendment right that her sentence to be
 
 *696
 
 proportional to her crime. Defendant argues that her failure to object to her sentence at the sentencing hearing did not serve to waive her right to appellate review based upon the
 
 Hargett
 
 line of cases interpreting
 
 Canady
 
 .
 

 We have determined that the
 
 Hargett
 
 line of cases are in conflict with controlling precedent, and cannot serve to mitigate Defendant's failure to object at trial as required by Rule 10(a)(1). Therefore, Defendant has waived appellate review of the alleged constitutional violation by failing to object at sentencing.
 
 Davis
 
 , 353 N.C. at 20,
 
 539 S.E.2d at
 
 257 ;
 
 Flippen
 
 ,
 
 349 N.C. at 276
 
 ,
 
 506 S.E.2d at 710
 
 ("Defendant further waived review of any constitutional issue by failing to raise a constitutional issue at the sentencing proceeding.");
 
 Freeman
 
 ,
 
 185 N.C. App. at 413-14
 
 ,
 
 648 S.E.2d at 881
 
 (Eighth Amendment argument that sentence was grossly disproportionate to the crime was abandoned because the defendant failed to object at trial).
 

 4.
 
 Abuse of Discretion
 

 Defendant argues that the trial court abused its discretion in sentencing her to two consecutive sentences, and only consolidating the third conviction for sentencing. Defendant argues that this issue was preserved, even absent objection, pursuant to
 
 Hargett
 
 and its progeny. To the extent Defendant failed to preserve this issue pursuant to Rule 10(a)(1), it has been waived.
 

 Assuming,
 
 arguendo
 
 , this issue was preserved at trial, we reject Defendant's argument. At sentencing, Defendant argued for consolidated sentences in the mitigated range. The mandated sentence for trafficking
 
 *147
 
 in more than four but less than fourteen grams of opium is a minimum of seventy months and a maximum of ninety-three months.
 
 N.C. Gen. Stat. § 90-95
 
 (h)(4)(a.) (2015). The trial court may only deviate from N.C.G.S. § 90-95(h)(4)(a.) if the defendant to be sentenced has provided law enforcement "substantial assistance" in identifying, arresting or convicting others who have participated in the crime for which the defendant is convicted. N.C.G.S. § 90-95(h)(5). Defendant was given the seventy months minimum, ninety-three months maximum sentence required by statute for each of her three trafficking convictions. However, although Defendant requested that each sentence run concurrently, the trial court ordered that two of Defendant's sentences run concurrently, but that those two sentences run consecutive to the third conviction.
 

 "When multiple sentences of imprisonment are imposed on a person at the same time ... the sentences may run either concurrently or consecutively, as determined by the court." N.C. Gen. Stat. § 15A-1354(a) (2009). The trial court has the discretion to determine whether to impose concurrent or consecutive sentences.
 

 State v. Nunez
 
 ,
 
 204 N.C. App. 164
 
 , 169-70,
 
 693 S.E.2d 223
 
 , 227 (2010). A sentence within the provided statutory range will be presumed correct unless " 'the record discloses that the [trial] court considered irrelevant and improper matter in determining the severity of the sentence[.]' "
 
 State v. Johnson
 
 ,
 
 320 N.C. 746
 
 , 753,
 
 360 S.E.2d 676
 
 , 681 (1987) (citations omitted). In the present case, the trial court sentenced Defendant to a minimum of 140 months, which is seventy months less than the 210 months allowed by statute. Defendant has failed to show that the sentence imposed constituted an abuse of discretion. This argument is without merit.
 

 III.
 
 Conclusion
 

 We hold that (1) Defendant was not denied effective assistance of counsel because any errors made by Defendant's counsel did not result in prejudice sufficient to sustain an IAC claim; (2) the holdings in
 
 Hargett
 
 and its progeny that "[o]ur Supreme Court [in
 
 Canady
 
 ] has held that an error at sentencing is not considered an error at trial for the purpose of N.C. Rule 10 [ (a) ](1)[,]"
 
 Hargett
 
 ,
 
 157 N.C. App. at 92
 
 ,
 
 577 S.E.2d at 705
 
 , are contrary to prior opinions of this Court, and contrary to both prior and subsequent holdings of our Supreme Court, and do not constitute binding precedent; (3) Defendant has failed to preserve her sentencing arguments for appellate review as required by Rule 10(a)(1) ;
 

 *148
 
 and (4) Defendant's argument that the trial court abused its discretion fails, even assuming it was preserved for appellate review.
 

 NO ERROR.
 

 *697
 
 Judge STROUD concurs.
 

 Judge MURPHY concurs in the result only.
 

 [1]
 

 Chief Garrison was serving as the Mars Hill Chief of Police at the time of Defendant's trial.
 

 [2]
 

 This testimony is the subject of one of Defendant's arguments on appeal.
 

 [3]
 

 Rule 10 was amended effective 1 October 2009, and certain provisions were changed and subsections moved. Prior to the 2009 amendment, the language cited above from subsection (a)(1) was located in subsection (b)(1). Therefore, all pre-amendment opinions refer to Rule 10(b)(1) when referring to what is now Rule 10(a)(1). In an attempt to achieve agreement between citations in this opinion, we will change (b) to (a) as needed, which will be indicated by brackets.
 

 [4]
 

 In a dissent in
 
 Freeman
 
 , the dissenting judge acknowledged that she had applied Rule 10(a)(1) inconsistently in her prior opinions.
 
 Freeman
 
 ,
 
 185 N.C. App. at 420
 
 ,
 
 648 S.E.2d at 885
 
 .
 

 [5]
 

 We also note that when
 
 Canady
 
 was decided, it was the judge acting as the trial court, and not the trier of fact, who decided whether to find an aggravating factor.
 

 [6]
 

 State v. Owens
 
 ,
 
 205 N.C. App. 260
 
 , 266,
 
 695 S.E.2d 823
 
 , 828 (2010), addressing a double jeopardy argument despite the defendant's failure to object during sentencing based on
 
 Hargett
 
 .
 

 [7]
 

 We note that our Supreme Court cited this section of
 
 Golphin
 
 in
 
 Reep
 
 ,
 
 360 N.C. at 37
 
 ,
 
 619 S.E.2d at 500
 
 , in the same analysis in which it cited
 
 Canady
 
 , further bolstering the argument that our Supreme Court has never interpreted
 
 Canady
 
 in the same manner as
 
 Hargett
 
 .
 

 [8]
 

 We note that Supreme Court opinions filed subsequent to
 
 Canady
 
 call into question even the more limited reading of its holding.
 
 State v. Thompson
 
 ,
 
 359 N.C. 77
 
 , 107,
 
 604 S.E.2d 850
 
 , 871 (2004) (failure to object to two of seven aggravating factors resulted in those two aggravating factors not being preserved for appellate review pursuant to Rule 10(a)(1) );
 
 State v. Bell
 
 ,
 
 359 N.C. 1
 
 , 30-31,
 
 603 S.E.2d 93
 
 , 113-14 (2004) (failure to object to submission of certain aggravating circumstances at sentencing violated Rule 10(a)(1) and issue was not preserved for appellate review);
 
 State v. Tirado
 
 ,
 
 358 N.C. 551
 
 , 598-99,
 
 599 S.E.2d 515
 
 , 546 (2004) (citations omitted) (the defendant "did not object, as required by Rule 10 [ (a) ](1) of the Rules of Appellate Procedure, to the trial court's submission of any of these three aggravating circumstances, either alone or in combination with one another. Under these circumstances, we review for plain error").
 

 [9]
 

 The prosecutor had suggested a continuance.